574 So.2d 625 (1990)
Steve Dean JACO and Jerry Jaco
v.
STATE of Mississippi.
No. 89-KA-0557.
Supreme Court of Mississippi.
December 19, 1990.
*627 Steve Jaco, Parchman, appellant pro se.
Jerry Jaco, Parchman, appellant pro se.
Mike C. Moore, Atty. Gen. and Deirdre McCrory, Sp. Asst. Atty. Gen., Jackson, for appellee.
Before ROY NOBLE LEE, C.J., and ROBERTSON and SULLIVAN, JJ.
ROBERTSON, Justice, for the Court:

I.
Today's appellants, brothers in crime as in blood, challenge their burglary convictions and recidivism sentences and claim they have been denied various rights secured to them by the constitution and laws of the United States and of this state. We have reviewed the record with care and, for the reasons presently to be presented, find that they are entitled to no relief on their direct appeal. The brothers present an alternative application for post-conviction relief, which similarly avails them nothing.

II.
Jerry Jaco was born April 15, 1958. His brother, Steve Dean, was born a few months short of five years later, on February 20, 1963. By their mid-twenties, the Jaco brothers had become experienced offenders in the field of property crimes[1] and *628 in early October of 1986, each was out on parole incident to previous convictions.
On the morning of October 11, 1986, the Jaco brothers went fishing with Mike Lewis Mills, Steve's twenty-year-old brother-in-law. The three were traveling in Mills' Gremlin automobile, later an obvious mistake. Later that day they pursued a more dubious fishing expedition. On the way home from browsing around the Oxford Mall, they took the Clear Creek Exit south off of Highway 6. The apparently unoccupied home of Paul Brisco seemed inviting. After driving by a few times, Mills let the Jaco brothers off at the Brisco house and drove down the road to a dumpster to throw out some garbage. The Jaco brothers broke in Brisco's back door and took a gun, a watch and other items. Mills returned and picked them up, catch in hand.
As fate would have it, Paul Brisco topped the hill a short distance from his house as a rather odd "little pink looking" car was pulling out of his driveway. Brisco ultimately managed to get close enough to the car to get the tag number. He returned to his home and found the back door wide open, the door facing broken. Not knowing whether anyone was still in the house, Brisco went a short distance to his shop. About this time the same pink looking car came by going in the opposite direction, and Brisco instructed one of his employees at the shop to follow it. Brisco called the Sheriff and then returned to his house to find the master bedroom had been "ramshackled" and that his gun and his wife's watch were missing.
To make a long story short, later that evening a Lafayette County Deputy Sheriff located the Gremlin, identified it by tag, but found only Mark Mills with the car. Although he had first denied any wrongdoing, Mills ultimately told all, and, on the following day, Steve and Jerry Jaco were taken into custody.
The precise details of what happened next are not clear from the record, but we do know that parole was revoked for the Jaco brothers, and each was immediately returned to custody of the Mississippi Department of Corrections which afforded them secure housing at the Mississippi State Penitentiary at Parchman.
On December 19, 1986, while the Jaco brothers were at Parchman, the Lafayette County Grand Jury returned an indictment charging all three, Steve Jaco, Jerry Jaco and Mike Mills, with the burglary of a dwelling. Miss. Code Ann. § 97-17-19 (1972). The Jaco brothers were indicted as habitual offenders. Miss. Code Ann. § 99-19-81 (Supp. 1986). Months passed without event. Neither Jaco brother made any efforts to secure counsel, either paid or appointed variety.
On July 7, 1987, Jerry Jaco completed his prior sentence and was released from Parchman and returned to the custody of the Sheriff of Lafayette County, whereupon he was released upon bond. Steve languished in the penitentiary.
On December 1, 1987, the Jaco brothers stood trial jointly in the Circuit Court of Lafayette County. By this time Mills had entered a plea of guilty in exchange for a *629 suspended sentence and provided substantial credible testimony that all but assured the Jacos' conviction. Brisco afforded testimony that verified the fact of the burglary, and he told of his fortuitous close encounter with the all too noticeable automobile bearing the burglars. Two Brisco employees also had seen the little Gremlin, although one described it as maroon and the other called it "purple-like." In the end the jury found Steve Jaco and Jerry Jaco each guilty of burglary, and upon receiving evidence that each had committed two prior felonies arising out of separate incidents and on separate occasions, the Circuit Court sentenced each to the custody of the Department of Corrections for a period of ten years without eligibility for probation or parole. Miss. Code Ann. § 97-17-19 (1972). Miss. Code Ann. § 99-19-81 (Supp. 1986).
The present appeal has followed.

III.
The Jacos do not seriously question the sufficiency of the evidence to support their conviction. Having in mind our familiar scope of review, the jury was more than justified in crediting the witnesses for the prosecution and believing that on the afternoon of October 11, 1986, the Jaco brothers broke and entered the Brisco residence with intent to steal whatever of value they may find therein, in short, to commit the crime of larceny. See, e.g., Leflore v. State, 535 So.2d 68, 70 (Miss. 1988); Gillum v. State, 468 So.2d 856, 859-61 (Miss. 1985); Lee v. State, 403 So.2d 132, 135 (Miss. 1981); Wright v. State, 387 So.2d 735, 736 (Miss. 1980).

IV.
The Jaco brothers strenuously argue that each was denied his right to a speedy trial. Every person accused of a crime, of course, enjoys the right to a speedy trial, and the right is secured independently by the Sixth and Fourteenth Amendments to the Constitution of the United States and by Article 3, Section 26 of the Mississippi Constitution of 1890.
Today's circumstances are somewhat unusual and require sensitive attention. The basics are that the Jaco brothers were arrested on October 12, 1986, and were not put to trial until December 1, 1987  some 414 days later.[2] No serious question is raised under our 270 day rule, Miss. Code Ann. § 99-17-1 (Supp. 1986), under which the clock does not begin to tick until the date of arraignment.[3]
If they are to obtain relief, it must be under the constitution(s) where it is settled that the speedy trial clock began to tick on October 12, 1986, the date of arrest. See Smith v. State, 550 So.2d 406, 408 (Miss. 1989); Beavers v. State, 498 So.2d 788, 790 (Miss. 1986); Lightsey v. State, 493 So.2d 375, 378 (Miss. 1986); Burgess v. State, 473 So.2d 432, 433 (Miss. 1985).[4]
Our point of beginning established, we turn to the familiar balancing test encrusted onto the right in Barker v. Wingo, 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972), and which, independently, we have accepted for speedy trial claims under Section 26 of our constitution. The four factors which must be considered are:
1) Length of delay,
2) Reason for the delay,

*630 3) Defendant's assertion of his right to a speedy trial, and
4) Prejudice resulting to the defendant.
No mechanical formula exists according to which these factors must be weighed and balanced. The weight given each necessarily turns on the peculiar facts and circumstances of each case, the quality of evidence available on each factor and, in the absence of evidence, identification of the party with the risk of non-persuasion. No one factor is dispositive. A sensitive weighing and balancing of all remain our touchstone.

A. Length of Delay
This factor is largely a function of mathematics and the calendar and as we have noted, the delay at issue is 414 days. The delay is the triggering mechanism under Barker and must be presumptively prejudicial or we go no further. If the delay be but  say  50 days, nothing in Barker suggests we need know more, for the claim fails on its face. We have recently held an eight-month delay presumptively prejudicial. Smith v. State, 550 So.2d 406, 408 (Miss. 1989), citing 2 W. LaFave and J. Israel Criminal Procedure § 18.2 (1984); see also, Beavers v. State, 498 So.2d 788, 790 (Miss. 1986) (423 day delay); Bailey v. State, 463 So.2d 1059, 1062 (Miss. 1985) (298 day delay).

B. Reason For The Delay
When we reach for the reason for the delay, we encounter unique circumstances. The record reflects little or no activity from October of 1986 until June of 1987. What is particularly important is that neither Jaco brother lifted a finger to secure counsel. Obviously neither was in a position to go to trial without counsel. Nothing in the record reflects that either Jaco brother made any formal request for counsel. For aught that appears, the two were merely returned to Parchman, their previous parole revoked, whereupon the present prosecution ceased to be a matter of any urgency to anyone. In any event, until June of 1987, at which time Jerry was about to be released upon completion of his sentence, we find that the matter was simply continued on the docket of the Circuit Court. In the present state of the record, we may not charge this time against the prosecution because the evidence prima facie shows the Jacos had made no request for counsel, nor taken any other steps in that direction.
What happened beginning in June of 1987 is equally unusual. It is important to bear in mind the general premise that, upon the Jacos' application and showing indigency, the State of Mississippi was burdened to provide each brother with counsel if it wished to prosecute him for burglary and obtain entry of a valid conviction and impose an enforceable sentence. Gideon v. Wainwright, 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963). Not just any counsel may satisfy the state's duty, only reasonably effective counsel. Strickland v. Washington, 466 U.S. 668, 686-87, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674, 692-93 (1984); Morris v. Slappey, 461 U.S. 1, 103 S.Ct. 1610, 75 L.Ed.2d 610 (1983). In this context the court is the critical arm of the state, not the prosecution team. We are concerned with the duties of the State of Mississippi as a body politic and not with any particular instrumentality thereof. The Fourteenth Amendment acts upon the state as such, the rule of Gideon v. Wainwright, upon its judicial and prosecutorial arms only by derivation therefrom.
All of this becomes particularly important in view of what happened next. Focusing solely on the case of Jerry Jaco  for Steve was still incarcerated at Parchman  on June 5, 1987, the Circuit Court appointed Ralph Dean of the Oxford, Mississippi, Bar to represent Jaco. Dean had been serving as Lafayette County Public Defender but less than one month later, on July 1, 1987, Dean submitted his resignation from that position and was relieved as counsel for Jerry Jaco. Shortly thereafter, the Lafayette County Board of Supervisors employed Omar D. Craig of the Oxford, Mississippi, Bar as Public Defender. The Circuit Court then appointed Craig to represent all three defendants named in the *631 indictment, the Jaco brothers and Mike Mills as well.
Soon thereafter the prosecution struck its deal with Mills and decided to try Steve and Jerry Jaco together. The case was set for trial on October 26, 1987, but when this date arrived the Court determined not only that the interests of Steve and Jerry Jaco were sufficiently diverse that Craig could not in good conscience represent both of them, and that Craig had by appointment represented Mills with whom the Jaco brothers had a clear conflict. At this point, the Court relieved Craig from further responsibilities in the matter and appointed David O. Bell of the Oxford, Mississippi, Bar to represent Steve Jaco and Richard C. Davis of the Oxford, Mississippi, Bar to represent Jerry Jaco. The matter was then set for trial on December 1, 1987, and the case was in fact tried on that date.
In its brief, the Attorney General argues that the prosecution cannot be charged with this time delay during which the Jaco brothers were changing lawyers. It is certainly true that nothing in the record remotely suggests that the change from Dean to Craig and from Craig to Bell and Davis was in any way the fault of the prosecuting team. On the other hand, it is the State of Mississippi that has the duty to afford an accused with a speedy trial, not merely its prosecutorial arm. If the state, through its judicial arm, provides counsel but then allows counsel to withdraw without fault or reason assignable to the defendant, the state is defaulting in  or at least delaying delivery upon  its Gideon -based duty. By the same token, if the state provides a single attorney for three defendants so that the attorney cannot act without a conflict of interest, the state again is defaulting in its Gideon -based duty. Nothing in the record begins to suggest that either Steve or Jerry Jaco caused or was otherwise at fault with regard to the change of attorneys from Dean to Craig and from Craig to Bell and Davis. Accordingly, this time cannot be charged to the defendants. On the other hand, the record contains not the slightest hint of prosecutorial bad faith or any deliberate delay, as a result of which this delay "weighs less heavily" against the state. Barker, 407 U.S. at 531, 92 S.Ct. at 2192, 33 L.Ed.2d at 117; United States v. Loud Hawk, 474 U.S. 302, 315, 106 S.Ct. 648, 656, 88 L.Ed.2d 640, 654 (1986); Saxton v. State, 394 So.2d 871, 875 (Miss. 1981).
In summary, we break the 414 day delay into two groups when we seek to identify the reasons therefor. First is the delay between October 12, 1986, the date of arrest, and June 5, 1987, the date the court first appointed counsel for Jerry Jaco. This is a period of some 236 days. No doubt a major reason for the delay here was that the prosecution felt no urgency about the matter because the Jaco brothers were securely housed in northern Sunflower County. On the other hand, there is not one word in the record that suggests that either Steve or Jerry Jaco moved so much as a muscle in order to obtain counsel and be ready for trial. That Gideon imposes a duty upon the state to provide counsel in no way exempts an accused from taking the initiative to advise the court that he is indigent and that he desires the appointment of counsel. Gideon guarantees the defendant a lawyer, not a guardian. We have held in other contexts that a defendant must act with reasonable diligence in securing counsel and that he is not entitled to a continuance of his case if he has failed in this regard or if at the last minute he discharges counsel and attempts to employ new counsel. See Harper v. State, 394 So.2d 311, 314 (Miss. 1981); Boyington v. State, 389 So.2d 485, 488-89 (Miss. 1980); Ladnier v. State, 273 So.2d 169, 173 (Miss. 1973). In short, there appears delay attributable to both sides  at least through June 5, 1987, in the case of Jerry Jaco  and, in the case of Steve, this delay continued until October 26, 1987.
By reason of what we have said above, delay after June 5, 1987, in the case of Jerry Jaco, and after October 26, 1987, in the case of Steve may not be in fairness charged to the Jaco brothers. On the other hand, this delay  179 days in Jerry's case and a mere 36 days in Steve's case  is not inordinate.

*632 C. Assertion of Right to Speedy Trial

One day before trial  on November 30, 1987, to be exact  Steve and Jerry Jaco first raised the speedy trial point, Steve moving to dismiss on grounds his right had been violated and Jerry objecting to being put to trial on similar grounds. There is no evidence that prior to that date either had demanded a trial. In point of fact, the Jaco brothers' trial commenced one day later, on December 1, 1987.
In Beavers we said "the right to a speedy trial" "is subject to a knowing and intelligent waiver." Beavers v. State, 498 So.2d at 791. Yet in Vickery v. State, 535 So.2d 1371, 1377 (Miss. 1988), we reversed and discharged the defendant though she did not demand a speedy trial. Barry Charles Smith did not assert his right to a speedy trial until five days before trial. "While Smith's failure to assert his right to a speedy trial prior to this time weighs against him, it is by no means fatal to his claim that he was denied a speedy trial." Smith v. State, 550 So.2d 406, 409 (Miss. 1989).
Of course, an accused has no duty to bring himself to trial. Barker v. Wingo, 407 U.S. 514, 527, 92 S.Ct. 2182, 2190, 33 L.Ed.2d 101, 115 (1972); Vickery v. State, 535 So.2d at 1377; Williamson v. State, 512 So.2d 868, 877 (Miss. 1987); Reed v. State, 506 So.2d 277, 281 (Miss. 1987); Nations v. State, 481 So.2d 760, 761 (Miss. 1985); Turner v. State, 383 So.2d 489, 491 (Miss. 1980). Still he gains far more points under this prong of the Barker test where he has demanded a speedy trial. On the present record, neither Steve nor Jerry gets any points.

D. Prejudice to the Defendant
Our cases have recognized that the prejudice prong of the Barker test has at least two quite distinct dimensions. First, most commonly, we inquire concerning prejudice to the accused in the actual defense of the indictment at trial. We look to such questions as whether witnesses have died or become unavailable, documents or other evidence have been destroyed, or memories have dimmed so that the accused is at a disadvantage which would not have attended him at a prompt trial. See Perry v. State, 419 So.2d 194, 200 (Miss. 1982); Wells v. State, 288 So.2d 860, 863 (Miss. 1974). The examples of possible trial prejudice recited in Barker bear directly on this case:
If witnesses die or disappear during a delay, the prejudice is obvious. There is also prejudice if defense witnesses are unable to recall accurately events of the distant past. Loss of memory, however, is not always reflected in the record because what has been forgotten can rarely be shown.
Barker v. Wingo, 407 U.S. 514, 532, 92 S.Ct. 2182, 2193, 33 L.Ed.2d 101 (1972).
Beyond this, the Supreme Court has repeatedly stated that, "the major evils protected against by the speedy trial guarantee exists quite apart from actual or possible prejudice to an accused's defense." United States v. McDonald, 456 U.S. 1, 8, 102 S.Ct. 1497, 1502, 71 L.Ed.2d 696, 703 (1982), quoting United States v. Marion, 404 U.S. 307, 320, 92 S.Ct. 455, 463, 30 L.Ed.2d 468, 478 (1971). In Moore v. Arizona, 414 U.S. 25, 94 S.Ct. 188, 38 L.Ed.2d 183 (1973), the Supreme Court, citing Barker and other cases, emphasized that
[P]rejudice to a defendant caused by delay in bringing him to trial is not confined to the possible prejudice to his defense in those proceedings. Inordinate delay,
"wholly aside from possible prejudice to a defense on the merits, may `seriously interfere with the defendant's liberty, whether he is free on bail or not, and ... may disrupt his employment, drain his financial resources, curtail his associations, subject him to public obloquy, and create anxiety in him, his family and his friends.'

United States v. Marion, 404 U.S. 307, 320, [92 S.Ct. 455, 463, 30 L.Ed.2d 468] (1971). These factors are more serious for some than for others, but they are inevitably present in every case to some extent, for every defendant will either be incarcerated pending trial or on bail subject to substantial restrictions on his liberty." *633 Barker v. Wingo, [407 U.S.] at 537, [92 S.Ct. at 2195, 33 L.Ed.2d 101] (White, J., concurring).
See also Id. at 532-33, 92 S.Ct. at 2192-93, 33 L.Ed.2d 101 (majority opinion). Moore, 414 U.S. at 26-27, 94 S.Ct. at 189-90, 38 L.Ed.2d at 186. In United States v. MacDonald, supra, the Court emphasized "[t]he speedy trial guarantee is designed to minimize the possibility of lengthy incarceration prior to trial, ... and to shorten the disruption of life caused by arrest and the presence of unresolved criminal charges." MacDonald, 456 U.S. at 8, 102 S.Ct. at 1502, 71 L.Ed.2d at 704. We have accepted this view of prejudice in Trotter v. State, 554 So.2d 313, 318 (Miss. 1989). Against this backdrop we understand why a delay of a year or more is presumptively prejudicial.
When we turn from these principles and examine the record before us, we find that the Jaco brothers' showing of prejudice is quite weak. Looking at the trial itself, we find no basis for believing that either Jaco brother was put at any evidentiary or tactical disadvantage by reason for the delay. The critical witnesses, accomplice Mike Lewis Mills and victim Paul Brisco, no doubt would have testified with the same devastating effect had the trial been held two weeks after indictment. Steve and Jerry Jaco each took the witness stand, incident to his speedy trial objection, and each was extensively questioned regarding prejudice at trial. Each admitted he was aware of no way in which he had been disadvantaged or otherwise prejudiced by reason of the delay.
Moreover, this is not the normal case of an accused having a criminal charge lodged against him so that in effect his life was put on hold for a substantial period of time. Steve and Jerry Jaco were returned to Parchman following their arrest, and this was the immediate circumstance which placed their lives on hold. Steve remained in custody on previous charges until the time of the present trial. The facts are a little different in the case of Jerry, who was released on June 5, and no doubt he was unable to pursue employment or other plans pending the present prosecution, but, as indicated above, the time delay thereafter was not inordinate.

E. Reconciliation of Factors
In sum, the 414 days delay between the date law enforcement authorities arrested Steve and Jerry Jaco and the date of their trial was presumptively prejudicial. On the other hand, a substantial part of the reason for the delay was that they took no steps to secure counsel. Beyond this, neither Steve nor Jerry Jaco demanded trial or asserted their right to a speedy trial until the eleventh hour. By reason of their parole revocation and incarceration to complete prior sentences, and, as well, the absence of any evidence of prejudice at trial, we find that little, if anything, in the delay here at issue operated to their substantial prejudice. Under these circumstances, we hold that neither Steve Jaco nor Jerry Jaco has suffered a deprivation of his right to a speedy trial.

V.
The Jaco brothers next complain that the Circuit Court refused to strike a juror whose admitted friendship with the Sheriff of Lafayette County would preclude her being fair. Neither Jaco challenged the juror peremptorily or for cause. Still they claim that, because this juror was allowed to serve, they were denied their right to trial before a fair and impartial jury as secured by the Sixth and Fourteenth Amendments to the Constitution of the United States and, independently, by Article 3, Section 26 of the Mississippi Constitution of 1890.
During voir dire, juror number 21 responded as follows when questioned by Jerry Jaco's attorney:
A. I am a very good friend with Sheriff East's family, I am number 21.
Q. How long have you known the Sheriff and his family?
A. All my life.
Q. You have lived in Lafayette County all your life?
A. I was born in California, I have visited here all my life.

*634 Q. Would this close friendship affect your feelings toward this trial?
A. No sir.
Q. Would the fact that you are friends with the Sheriff's family stand in the way of your finding a fair verdict for Jerry Jaco and his brother as well, would you be fair as well?
A. No sir, I can't be fair.
Q. You can't be fair, would you feel like if you ran into Buddy's family on the street, if you would feel bad about it if you find for the acquittal?
A. No sir, I could not.
Q. You could still be his friend and that wouldn't affect you.
A. Yes sir.
The short answer is that the Jacos waived the point when they failed timely to challenge this juror either for cause or peremptorily. This Court in Ratliff v. State, 515 So.2d 877, 880 (Miss. 1987), held that, when at trial the appellant had not challenged any of the jurors for cause, he could not later complain of the composition of the special venire from which the jury was selected. See also, Johnson v. State, 512 So.2d 1246, 1255 (Miss. 1987); Chisolm v. State, 529 So.2d 635, 639 (Miss. 1988); United States v. Cepeda Penes, 577 F.2d 754, 758-59 (1st Cir.1978), and United States v. Diaz-Albertini, 772 F.2d 654, 656-57 (10th Cir.1985).

VI.
Steve and Jerry Jaco each argue that he had wished to testify in his own defense at trial and was not allowed to do so by his attorney. Each claims that he was thus denied his right of allocution as secured by the Sixth and Fourteenth Amendments to the Constitution of the United States and, independently, by our Article 3, Section 26 of the Mississippi Constitution of 1890. Each attaches to his reply brief an affidavit setting forth the facts and circumstances.
The claim fails on direct appeal, for there is not one word in the present record that even mentions the point. The record reflects that at the conclusion of the prosecution's case, each defendant rested without offering any evidence. Nothing suggests that either defendant indicated of record a desire to testify, nor is there any course of proceedings in chambers wherein the Court advised Steve and Jerry Jaco of their right of allocution. See Shelton v. State, 445 So.2d 844, 847 (Miss. 1984); Culberson v. State, 412 So.2d 1184, 1186 (Miss. 1982), affirmed 456 So.2d 697 (Miss. 1984). As the point was not presented in any way, shape, form or fashion at trial, it is not available to the Jaco brothers on their direct appeal. On the other hand, they ask in the alternative that their application on this point be treated as one for post-conviction relief and we will address that matter below.

VII.
Finally, Steve and Jerry Jaco each argues that his conviction should be reversed and his sentence vacated on grounds he was denied the right to effective assistance of counsel as guaranteed by the Sixth and Fourteenth Amendments to the Constitution of the United States and, independently, by Article 3, Section 26 of the Mississippi Constitution of 1890. Each has dispatched trial counsel from further service and is no doubt in a position to raise the point on direct appeal. Read v. State, 430 So.2d 832, 841 (Miss. 1983). In their briefs, the Jaco brothers assert six particulars which, in their view, cumulatively amount to a denial of their right to effective assistance of counsel. These are (1) the delay in counsel being appointed for them, (2) the untimeliness and lack of arraignment, (3) their counsels' failure to subpoena and present evidence from alibi witnesses, (4) their counsels' failure to properly advise them of their right to testify in their own behalf, (5) their counsels' failure to allow them to testify in their own behalf, and (6) the delay in the trial record being filed in this Court.
The points may be dealt with seriatim. The subject of the delay and appointment of counsel have been discussed above. Assuming delay in counsel is lack of counsel, there is no showing of prejudice, a point again discussed above. We are afforded no clue how the untimeliness and lack of an *635 arraignment operated to the prejudice  Strickland v. Washington style  of either defendant. If, in fact, there has been a substantial failure on the part of counsel to procure witnesses for the defendants, that would be a matter cognizable on this point, but we are afforded nothing in the present record which begins to suggest that there were in fact witnesses who would have testified favorably to the defense. The matter of the right of the Jaco brothers to testify in their own defense has been discussed above and is mentioned further below.
The delay in filing the trial record is a matter that would go to ineffective assistance of counsel on appeal. See Evitts v. Lucey, 469 U.S. 387, 105 S.Ct. 830, 83 L.Ed.2d 821 (1985); Murray v. Carrier, 477 U.S. 478, 106 S.Ct. 2678, 91 L.Ed.2d 397 (1986). The simple answer is that the Jaco brothers have offered nothing suggesting that the outcome of their appeal may have been different had the Court Reporter been more prompt in preparing the record nor have they suggested any other cognizable prejudice.

VIII.
By reason of the foregoing, we hold that on direct appeal the judgment of the Circuit Court of Lafayette County, Mississippi, that Steve Jaco and Jerry Jaco each stand convicted of the crime of burglary of a dwelling and, as well, the sentence of ten years imprisonment imposed upon each of them without eligibility for probation or parole, is hereby affirmed.

IX.
With regard to their claim of ineffective assistance of counsel and, as well, their specific claim that they were denied their right of allocution before the Circuit Court, the Jaco brothers asked in the alternative that their papers be treated as an application for post-conviction relief. Common sense, judicial efficiency and long-standing precedent suggest we ought allow such a process. See Sanders v. State, 439 So.2d 1271, 1276 (Miss. 1983).

A.
Looking first at the Jaco brothers' general claim that they were denied effective assistance of counsel, we find this claim procedurally alive though we have considered it on direct appeal. Miss. Code Ann. § 99-39-27(5) (Supp. 1986); Neal v. State, 525 So.2d 1279, 1281 (Miss. 1987); Perkins v. State, 487 So.2d 791, 792-93 (Miss. 1986). The parameters of the claim are familiar and need not be repeated, except to cite Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), and a few of our cases such as Ferguson v. State, 507 So.2d 94, 95-97 (Miss. 1987); Waldrop v. State, 506 So.2d 273, 275-76 (Miss. 1987); Alexander v. State, 503 So.2d 235, 240-41 (Miss. 1987). We must view the Jaco brothers' papers in light of the standards articulated in Neal, 525 So.2d at 1280-81; and Billiot v. State, 515 So.2d 1234, 1237 (Miss. 1987). We have done so and find that neither Steve Jaco nor Jerry Jaco has made a substantial showing that he has been denied a state or federal right. We hold that neither Steve nor Jerry Jaco has made a sufficient showing that he is entitled to an evidentiary hearing and, on this general point, the claim of each for post-conviction relief is denied.

B.
Steve and Jerry Jaco each claims as well that he was denied the right to testify in his own defense at the trial held in the Circuit Court of Lafayette County on December 1-2, 1987. Each claims that had he been allowed to testify he would have presented highly probative evidence in the nature of an alibi, that is, that each was visiting Jerry Jaco's sister at all relevant times on the afternoon of October 11, 1986, and, therefore, they could not have been at the Brisco place perpetrating the burglary.[5] Suffice it to say that if the Jaco brothers were at Jerry's sister's house, they could not have been at the Brisco house.
*636 For present purposes, we find Steve and Jerry each presenting substantial and detailed affidavits to the effect that he had never been through a jury trial, that he was not aware that he had a right to testify, that in fact he desired to testify but that his attorney strongly advised against testifying. We have addressed the question in several recent cases, Neal v. State, 525 So.2d at 1283; Culberson v. State, 412 So.2d at 1186, and have held that this Court must allow the defendant an evidentiary hearing where he presents a substantial and detailed affidavit to the effect that his attorney denied and affirmatively prevented him from testifying. Against the backdrop of these decisions we have carefully reviewed the affidavits of Steve and Jerry Jaco. We find that Steve Jaco charges
5. That my attorney advised me against testifying in my own behalf at my trial, telling me that the prosecution's case was weak and that if I took the stand and testified I would automatically be found guilty. That I had never been to a jury trial before and did not know that I could testify even if my attorney did not want me to.
6. That if anyone had asked me during my trial if I wanted to testify, I would have told them that I did; and if I had been given an opportunity to testify, I would have.
Jerry Jaco's affidavit is essentially the same.
5. That at the time of my trial, I was not aware that I could testify in my own behalf even if my attorney did not want me to testify. That my attorney told me that the prosecution would not be able to present evidence that proved beyond a reasonable doubt that I was guilty of the burglary and that I did not have to prove anything; he further advised me that if I testified, the district attorney would "eat me alive."
6. That if anyone had asked me during trial if I wanted to testify, I would have told them that I did; and if I had been given an opportunity to testify, I would have.
There is a difference between being prevented from taking the stand and testifying in one's own behalf, on the one hand, and, on the other, receiving advice of counsel that this would be an inadvisable move and accepting that advice. There are no doubt times when it would be folly for the defendant to take the stand, and counsel who failed to advise of such would be derelict, if not ineffective. One of those circumstances may be where the prosecution's proof is circumstantial and the accused has a string of recent convictions. See Rule 609, Miss.R.Ev.
Crediting the allegations of the two affidavits, we find that what and all Steve and Jerry Jaco are saying is that each received substantial advice that it would be contrary to his interest to testify. While each carefully crafts his affidavit to suggest he was unaware of his right of allocution, neither suggests that he ever asked his attorney regarding his rights in this regard nor is there any suggestion that his attorney gave any dubious legal advice on the point. For these reasons, we regard this case as distinguishable from Neal and Culberson and deny the Jaco brothers' claim for an evidentiary hearing on this point.
CONVICTION OF BURGLARY OF A DWELLING AND SENTENCE AS AN HABITUAL OFFENDER TO TEN (10) YEARS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS AFFIRMED AS TO JERRY JACO AND AFFIRMED AS TO STEVE JACO. PETITION FOR POST-CONVICTION RELIEF DENIED AS TO JERRY JACO AND DENIED AS TO STEVE JACO.
ROY NOBLE LEE, C.J., HAWKINS, DAN M. LEE, P.JJ., and PRATHER, SULLIVAN, ANDERSON, PITTMAN and BLASS, JJ., concur.
NOTES
[1] Jerry Jaco's prior record includes:

CAUSE CONVICT. INCIDENT
 NO. COURT OF CONVICTION DATE OFFENSE DATE SEN. (YRS.)
----------------------------------------------------------------------------------
3361 Second Judicial
 Dist. of Panola 10/24/80 Grand Larceny 8/11/80 5 yrs.
 Co., Ms. Circuit Habitual Criminal
 Court
3207 Second Judicial 10/17/77 Receiving Stolen 9/15/77 3 yrs.
 Dist. of Panola Property
 Co., Ms.
3208 Second Judicial 10/17/77 Burglary 9/08/77 5 yrs.
 Dist. of Panola
 Co., Ms. Circuit
 Court

Steve Dean Jaco's prior record includes:

CAUSE CONVICT. INCIDENT
 NO. COURT OF CONVICTION DATE OFFENSE DATE SEN. (YRS.)
--------------------------------------------------------------------------------
3734 Circuit Court of 9/29/83 Burglary of 9/7/82 5 yrs/2 yrs
 First Judicial Dwelling House sus./3 yrs to
 Dist. of Panola serve
 Co., Ms. concurrent
 with 3733
3733 Circuit Court of 9/29/83 Burglary of 9/7/82 Same as above
 First Judicial Dwelling House
 Dist. of Panola
 Co., Ms.
3478 Circuit Court of 10/13/82 Burglary 8/19/81 5 yrs.
 First Judicial
 Dist. of Panola
 Co., Ms.
3778 Circuit Court of 4/15/82 Burglary 8/19/81 5 yrs sus.
 First Judicial revoked
 Dist. of Panola 4/21/83
 Co., Ms. sent. to 5
 yrs.

[2] During this period, the Circuit Court of Lafayette County convened for regular term sessions four times: on the first Monday of January, 1987, for twelve days; on the first Monday of April, 1987, for twelve days; on the second Monday of July, 1987, for twelve days; and on the third Monday of October, 1987, for twelve days.
[3] The record reflects that Steve Jaco was arraigned on November 30, 1987, the day before trial, and that Jerry Jaco waived arraignment on October 26, 1987, and entered a plea of not guilty. The Jacos insinuate that their arraignment was deliberately delayed to avoid starting the 270 day rule's clock, and, if this were so, it would be a matter of serious concern. Nothing in today's record supports the insinuation.
[4] In its brief, the Attorney General urges that the speedy trial clock begins to tick at the time of indictment, citing Fisher v. State, 532 So.2d 992, 995 (Miss. 1988); and Livingston v. State, 525 So.2d 1300, 1304 (Miss. 1988). These cases are inapposite because the Jaco brothers' arrest incident to the present prosecution is what returned them to custody.
[5] It appears the Jaco brothers may have been hoping one unfamiliar with the geography would review this record. They insist that they were at Jerry Jaco's sister's house which is described as being "six miles east of Batesville, just off Highway 6." The residence of Paul Brisco which was the subject of the burglary is some five miles west of Oxford off of Highway 6 and on Clear Creek Road. One does not have to live in the area to know that by the map the Brisco residence and Jerry Jaco's sister's residence are not very far from each other. For present purposes, we make nothing of the point.