769 So.2d 247 (2000)
Peter BELL a/k/a Peter E. Bell, Appellant,
v.
STATE of Mississippi, Appellee.
No. 1998-KA-01679-COA.
Court of Appeals of Mississippi.
October 17, 2000.
*249 Cecil Gerald Woods, Jr., Gulfport, Attorney for Appellant.
Office of the Attorney General by Deirdre McCrory, Attorney for Appellee.
BEFORE KING, P.J., LEE, AND MYERS, JJ.
LEE, J., for the Court:
¶ 1. Peter Bell was convicted of the transfer of a controlled substance to Russell Holliman an undercover agent. The substance was later determined to be .1 gram of cocaine. Originally, Bell was indicted for selling the cocaine within 1,500 feet of Morning Star Baptist Church which would have enhanced his sentence. However, at the time of sentencing the State did not pursue an increased sentence based on the fact that the sell occurred within 1,500 feet of a church, but instead, since Bell was an habitual offender, chose to pursue an increased sentence under the habitual offender statute of Miss.Code Ann. § 99-19-81 (Rev.1994). Due to his habitual status, Bell was sentenced to thirty *250 years in the Mississippi Department of Corrections. Aggrieved by this sentence, Bell filed a timely appeal and presents the following issues: (1) whether the sentence of thirty years constitutes a sentence of life in prison and is cruel and unusual punishment, (2) whether the trial court erred when it allowed the State to amend the indictment on the day of trial to include the habitual offender status, (3) whether the trial court erred in denying Bell's motion to dismiss based on the lack of a speedy trial, (4) whether the trial court erred in not quashing the indictment, and (5) whether the trial court erred in not granting a directed verdict. Finding these issues to be without merit, we affirm the decision of the trial judge.

FACTS
¶ 2. On August 1, 1997, Agent Russell Holliman participated in the undercover purchase of narcotics in Bay St. Louis. Holliman met with Detective Shane Corr at approximately 5:30 p.m. where he was searched and received twenty dollars to purchase the controlled substance. Holliman not only acquired the money to make the purchase, but also received an automobile furnished with audio and video equipment. After Holliman obtained the money and the automobile, he proceeded to patrol the streets of Bay St. Louis.
¶ 3. Eventually, Holliman passed an automobile and the black male driving the automobile "yelled" at him and he stopped. The individual then inquired as to what Holliman was looking for. Holliman stated that he was looking for "a twenty." Holliman explained that the male then leaned out of his automobile into his and gave him two small off-white rocks which appeared to be crack cocaine, and he gave the subject twenty dollars. It was at this time that some individuals approached the automobiles on bicycles and Holliman drove away from the scene.
¶ 4. Shortly after the transaction, Holliman met with Corr and gave him a description of the male with whom he made the transaction and a description of the automobile the suspect was driving. Holliman described the automobile as an older model Ford LTD with a white body and a red top. Holliman also delivered the substance to Corr. While the automobile driven by Holliman had been equipped with audio and video equipment to record the transaction, the State conceded that it was not functioning properly. Therefore, there is no audio or video recording positively identifying Bell as a participant in the transfer of the controlled substance.
¶ 5. Once Corr received the descriptions and the substance from Holliman he patrolled the location where the purchase occurred and found an automobile matching the description. Corr knew the individual in the automobile which matched the description given by Holliman as Mr. Bell. Thereafter, Corr went to the police department and compiled six photographs, including a photograph of Bell, for Holliman to examine in a photographic lineup. Bell's photograph was identified by Holliman as the individual who transferred the substance to him. The identification of Bell by Holliman occurred approximately fifty-six minutes from the time of the transaction. On August 8, 1997, Bell was arrested for the commission of this crime.
¶ 6. At the trial of this matter, a Mississippi Crime Laboratory employee who tested the substance positively identified the presence of cocaine.
¶ 7. When Bell testified at the trial, he denied having sold the cocaine to Holliman.

DISCUSSION

I. WHETHER THE SENTENCE OF THIRTY YEARS CONSTITUTES A SENTENCE OF LIFE IN PRISON AND IS CRUEL AND UNUSUAL PUNISHMENT.
¶ 8. Bell argues that his sentence of thirty years equals cruel and unusual punishment pursuant to the Eighth *251 Amendment and cites the case of Solem v. Helm, 463 U.S. 277, 103 S.Ct. 3001, 77 L.Ed.2d 637 (1983), to support his argument. In Solem, the United States Supreme Court established a three prong test to assist courts in their determination of whether an imposed sentence was disproportionate to the crime committed and was violative of the Eighth Amendment. Id. at 277, 103 S.Ct. 3001. The three prong analysis is as follows: (1) look at the gravity of the offense and the harshness of the penalty, (2) compare the sentences imposed on other criminals in the same jurisdiction, and (3) weigh the sentences imposed for the commission of analogous crimes in other jurisdictions. Id. at 290-91, 103 S.Ct. 3001. Counsel for Bell attempted to prove the sentence was disproportional by documenting in his brief sentences imposed in the same jurisdiction involving the sale of controlled substances. However, this Court is not bound to analyze the elements listed in Solem, or the presentation of other crimes and their sentences, as they might pertain to the Solem analysis for two reasons: (1) this argument was not raised before the lower court so it could rule on the merits of the issue, and (2) none of the statistical information regarding similar sentences imposed in the same jurisdiction is contained in the record. See Davis v. State, 750 So.2d 552 (¶ 40) (Miss.Ct.App.1999) (stating that failure to raise the issues which were capable of determination at the trial court level or on direct appeal constitutes a waiver and is procedurally barred); Hennington v. State, 702 So.2d 403 (¶ 29) (Miss.1997) (stating that facts that are sought to be proved by a party must be placed in the record to be considered by an appellate court). Nevertheless, even if this argument had been presented to the trial court we find that it is without merit.
¶ 9. Sentencing is generally within the sound discretion of the trial judge and the trial judge's decision will not be disturbed on appeal if the sentence is within the term provided by statute. Davis v. State, 724 So.2d 342 (¶ 10) (Miss.1998). The practical effect of this general rule is that a trial judge's sentencing decision has traditionally been treated as unreviewable so long as the sentence was within the statutory limits. As a general rule, a sentence that does not exceed the maximum period allowed by statute will not be disturbed on appeal. Wallace v. State, 607 So.2d 1184, 1188 (Miss.1992). In Davis v. State, 724 So.2d 342 (¶ 11) (Miss.1998), the Mississippi Supreme Court acknowledged that the length of sentences is properly controlled by the legislature. Additionally, in McGruder v. Puckett, 954 F.2d 313, 316 (5th Cir.1992), when the United States Court of Appeals for the Fifth Circuit addressed the issue of disproportionality in sentencing, it noted that when a court conducts a proportionality analysis under the Eighth Amendment, it must not address the present offense only, but must also consider the present offense with the Mississippi habitual offender statute if applicable. Upon conviction for the sale of cocaine, a person may be sentenced to "not more than 30 years...." Miss.Code Ann. § 41-29-139(b)(1) (Supp.1999). Mississippi law provides several instances where a sentence for the sale of cocaine may be enhanced. Bell's sentence was enhanced pursuant to Miss.Code Ann. § 99-19-81 (Rev.1994) (providing for mandatory maximum sentence without parole or probation for offenders who have been convicted twice previously of any felony or federal crime and who have been sentenced to separate terms of one year or more).
¶ 10. The Mississippi Supreme Court acknowledged in Hoops v. State, 681 So.2d 521, 538 (Miss.1996), that Solem was overruled in Harmelin v. Michigan, 501 U.S. 957, 965-66, 111 S.Ct. 2680, 115 L.Ed.2d 836 (1991), "to the extent that it found a guarantee in the proportionality in the Eighth Amendment." Therefore, with Harmelin in place, it appears that the Mississippi Supreme Court has held that Solem is only applicable if a threshold comparison of the crime committed to the sentence imposed leads to an inference of *252 "gross disproportionality." Hoops, 681 So.2d at 538. Bell cites Clowers v. State, 522 So.2d 762, 763-65 (Miss.1988), to support his argument for the first prong of the Solem test regarding disproportionality. As mentioned earlier, this prong requires trial and appellate courts to compare the gravity of the offense against the harshness of the penalty. Solem v. Helm, 463 U.S. 277 at 290-91, 103 S.Ct. 3001. In Clowers, the defendant was an habitual offender but had presently been convicted of forging a $250 check. Clowers, 522 So.2d at 763. As an habitual offender, Clowers was subject to the mandatory maximum sentence of fifteen years without parole. Id. The trial court imposed a sentence of less than fifteen years on the grounds that the mandatory maximum sentence would be disproportionate to the crime. Id. On cross-appeal, the Mississippi Supreme Court affirmed. Id. at 765.
¶ 11. Clowers is distinguishable from the case at bar. When the trial judge was preparing to render the sentence to Clowers he expressed his concerns about the current maximum sentence for forgery. Id. at 764. The trial judge explained that he believed the maximum sentence for forgery was disproportionate to more serious crimes such as burglary; therefore, under the circumstances the maximum sentence for forgery was disproportionate. Id. Unlike the crime of forgery, Bell was sentenced for the transfer of a controlled substance. The Mississippi Supreme Court has acknowledged the seriousness of crimes involving the sale of narcotics. In Davis v. State, 724 So.2d 342 (¶ 11) (Miss. 1998), the Mississippi Supreme Court addressed the sale of cocaine in our society and deemed it understandable that the sale of cocaine had serious penalties due to the effect it has on Mississippi and the nation. Id. Additionally, during the sentencing hearing for Bell evidence was presented regarding his habitual offender status. The documents regarding the prior crimes committed by Bell revealed that they also involved the transfer of a controlled substance.
¶ 12. This Court also notes that the holding in Clowers v. State is not the rule, but the exception. Id. at 765. The Mississippi Supreme Court in Clowers clearly stated that it was establishing no litmus test for proportionality and noted that "outside the context of capital punishment, successful challenges to the proportionality of a particular sentence will be exceedingly rare." Clowers, 522 So.2d at 765 (quoting Solem, 463 U.S. at 289-90, 103 S.Ct. 3001).
¶ 13. In Barnwell v. State, 567 So.2d 215, 222 (Miss.1990), the defendant was sentenced as an habitual offender to fifteen years imprisonment without parole for uttering a single $500 forged check, and the Mississippi Supreme Court held that the sentence was not so disproportionate to the crime as to require reversal. In Barnwell, the Mississippi Supreme Court further emphasized the limited scope of Clowers, by stating that "Clowers, by its own statement, is limited to its own distinctive facts and procedural posture." Barnwell, 567 So.2d at 221.
¶ 14. In reviewing Bell's sentence, we also examine the recent Mississippi Supreme Court case of Davis v. State, 724 So.2d 342 (¶ 8) (Miss.1998), which addressed the issue of the proportionality of a sentence relative to the nature and details of the crime.
¶ 15. Davisinvolved an instance where a twenty-five year old mother was sentenced to sixty years in prison for the sale of two-tenths of a gram of cocaine within 1,500 feet of a church. Davis, 724 So.2d at (¶ 10). Davis was not tried as an habitual offender and the trial judge did not have the benefit of a pre-sentence investigation. Id. Additionally, the trial judge failed to give an explanation regarding the imposition of such a long sentence. Id. at (¶¶ 9-10). Without a record which reflects egregious circumstances, this Court will be concerned about the severity of the sentence. Id. at (¶ 10). The supreme court remanded for re-sentencing, finding there was insufficient evidence in the record to *253 support the maximum sentence allowable under the statute. Id. at (¶ 15). In essence, the Mississippi Supreme Court set forth a requirement that the trial judge justify any sentence that appears harsh or severe for the charge. Id. at (¶ 11). Our review of the record reveals that the facts inDavis are distinguishable from the case at bar.
¶ 16. Unlike the facts in Davis, Bell was tried and sentenced as an habitual offender. The previous convictions of Bell were acknowledged by the trial judge at the sentencing hearing prior to Bell receiving his sentence. The trial judge also acknowledged that since the habitual offender statute was applicable, as the trial judge, he had the discretion to impose the maximum penalty of thirty years. The trial court allowed Bell to present any evidence he believed would mitigate the sentence that was going to be imposed. After the presentation of Bell's testimony, the lower court enumerated that it took no satisfaction in imposing a prolonged sentence; however, it determined that the testimony of Bell did not present mitigating circumstances requiring deviation from the statute. Additionally, the order of the trial court reinforces that it considered the gravity of the offense with the harshness of the sentence before imposing the thirty year sentence. The trial court properly utilized the broad discretionary authority granted to it. The facts of this case do not lead this Court to conclude that Bell received a grossly disproportionate sentence; therefore, a further proportionality review under Solem is not warranted. We find this issue is without merit.

II. WHETHER THE TRIAL COURT ERRED WHEN IT ALLOWED THE STATE TO AMEND THE INDICTMENT ON THE DAY OF THE TRIAL REGARDING THE HABITUAL OFFENDER STATUS.
¶ 17. Bell argues that the trial court erred when it allowed the State to amend the indictment regarding his habitual status on the day of his trial without further action by the grand jury. The State counters this argument and asserts that it was properly within the guidelines of statutory and case law when it amended the indictment to prove Anderson's habitual status under Miss.Code Ann. § 99-19-81 (Rev.1994).
¶ 18. In Burrell v. State, 726 So.2d 160 (¶ 4) (Miss.1998), the Mississippi Supreme Court clearly stated that amendments to indictments to charge the defendant as an habitual offende are allowed. These amendments are not viewed as one of substance and are allowed by Uniform Circuit and County Court Rule 7.09. Id. The amendment is allowed because it affects only the sentence imposed and does not affect the substance of the offense for which the individual was originally indicted. Id.
¶ 19. Uniform Circuit and County Court Rules 7.09 states:
All indictments may be amended as to form but not as to the substance of the offense charged. Indictments may also be amended to charge the defendant as an habitual offender or to elevate the level of the offense where the offense is one which is subject to enhanced punishment for subsequent offenses and the amendment is to assert prior offenses justifying such enhancement.... Amendment shall be allowed only if the defendant is afforded a fair opportunity to present a defense and is not unfairly surprised.
¶ 20. A review of the record reveals that the amendment to the indictment about which Bell complains was of no surprise. The actual motion to amend was filed on August 31, 1998, approximately six weeks before the hearing was conducted on October 14, 1998. Additionally, Bell does not assert surprise or refute the validity of any of his prior convictions. Therefore, we find this issue to be without merit and affirm the trial court.

III. WHETHER THE TRIAL COURT ERRED IN DENYING *254 BELL'S MOTION TO DISMISS BASED ON THE LACK OF SPEEDY TRIAL.
¶ 21. Bell approaches the contention that he was denied a speedy trial with a rather novel argument. Bell does not assert that it was the prosecution acting on behalf of the State that prejudiced him and caused a delay in his trial, but rather it was his court-appointed attorney that caused the delay. Bell contends that his court-appointed attorney should be considered an agent of the State since court-appointed attorneys are paid on a salary basis, are controlled by the circuit court judge, and their work is directed and assigned by the trial court. Bell continues his argument by asserting that his court-appointed attorney had been burdened with too heavy of a case load to effectively represent him; therefore, the delay should be charged to the State. This Court notes that Bell did cite the applicable law which guides this Court in our determination of whether his right to a speedy trial has been violated. Nevertheless, Bell failed to cite any law to support his argument regarding the proposition that his court-appointed counsel should be considered an agent of the State and that delays created by said counsel should be attributed to the State. Since no law was cited, we do not have to review his claim. Cavett v. State, 717 So.2d 722 (¶ 9) (Miss.1998). Although this issue is barred, we will analyze the four factors enumerated in Barker v. Wingo, 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972), and restated in Jaco v. State, 574 So.2d 625, 629 (Miss.1990), to determine if Bell was denied a speedy trial.
¶ 22. Each individual accused of a crime is assured the right to a speedy trial independently by the Sixth and Fourteenth Amendments to the Constitution of the United States and by Article 3, Section 26 of the Mississippi Constitution of 1890. Jaco, 574 So.2d at 629. Bell's constitutional right to a speedy trial attached at the time of his arrest. Simmons v. State, 678 So.2d 683, 686 (Miss.1996). The trial was held more than fourteen months after his arrest, and a delay of more than eight months is presumptively prejudicial and triggers an inquiry into the reasons that delayed Bell's trial. Jaco v. State, 574 So.2d 625, 629-30 (Miss.1990). In assessing the effects of a delay longer than eight months, the Mississippi Supreme Court considers the following four factors enumerated in Barker: 1) length of delay, 2) reason for the delay, 3) defendant's assertion of his right to a speedy trial, and 4) resulting prejudice to the defendant. Jaco, 574 So.2d at 630. The Mississippi Supreme Court asserted in Jaco that each factor in the four pronged analysis is as important as the others and are to be weighed individually against the particulars of each case stating:
No mechanical formula exists according to which these factors must be weighed and balanced. The weight given each necessarily turns on the peculiar facts and circumstances of each case, the quality of evidence available on each factor and, in the absence of evidence, identification of the party with the risk of non-persuasion. No one factor is dis-positive. A sensitive weighing and balancing of all remain our touchstone.
Id.
¶ 23. As noted earlier, more than fourteen months elapsed from Bell's arrest until trial; therefore, this delay is presumptively prejudicial. This factor weighs in favor of Bell and triggers an inquiry into the three remaining factors.
¶ 24. The second factor calls on this Court to examine the reason for the delay. It is essential that the reasons behind each delay are carefully examined. Delays not attributable to Bell weigh against the prosecution unless the State can show good cause. Vickery v. State, 535 So.2d 1371, 1377 (Miss.1988). Bell had two attorneys appear on his behalf in this matter: one was officially appointed by the lower court and eventually withdrew; while the other was employed by Bell and *255 was present throughout the trial and his appeal. InBiggers v. State, this Court observed that delays associated with the defendant switching counsel are beyond the control of the State and should be charged to the defendant. Biggers v. State, 741 So.2d 1003 (¶ 10) (Miss.Ct.App.1999). Bell was granted three continuances: one continuance was granted to Bell because he had not completed discovery, the second continuance was granted to Bell because his new defense counsel was not available, and the third continuance was granted to Bell due to the late substitution of defense counsel. The record is absent of any reference that the State requested a continuance or that the State's action or inaction caused significant delay in bringing this case to trial, and as previously mentioned Bell does not argue this point. The majority of the delay rests with Bell through his numerous continuances and changing of legal counsel. This prong weighs in favor of the State.
¶ 25. Deciding that the second prong weighs in favor of the State, we now review the third prong of the Barker analysis which requires the defendant to assert his right to a speedy trial. Jaco, 574 So.2d at 632. While the defendant has some responsibility to assert his right to a speedy trial, the primary burden falls on the courts and the prosecutor to assure that cases are brought to trial in a timely fashion. Flores v. State, 574 So.2d 1314, 1323 (Miss.1990). On June 11, 1998, approximately, four months before Bell's trial, he filed a motion for a speedy trial. In the interim, from the filing of the motion for speedy trial to his actual trial, Bell filed all three of his motions for continuance. Bell's motion for speedy trial was not heard by the trial court until the day of trial when an ore tenus motion was filed by his new counsel. Therefore, the State benefits from our review of this factor.
¶ 26. The fourth and final factor we must review concerns any prejudice the defendant may have suffered as a result of the delay. Bell specifically asserts he suffered prejudice because if the trial had been conducted sooner, there would not be a serious issue with misidentification, he would not have lost contact with an alibi witness, and certain fact witnesses' memories would not have faded. He also asserts that he was unable to receive bond on the present charge for almost one year because there was a "detainer" in place as a result of these charges. There is no merit to these allegations. Bell fails to refer to any specific instance in his brief or in the record where it reflected misidentification, loss of an alibi witness, or a faded memory of a witness. Likewise, we find Bell's argument regarding his bond to be unpersuasive. Once again, the State profits from our analysis of this factor. When considering our analysis of all four factors the State is not to bear the ultimate responsibility for the delay in Bell's trial, instead it is Bell who is accountable. Therefore, this issue is without merit.

IV. WHETHER THE TRIAL COURT ERRED IN NOT QUASHING THE INDICTMENT.
¶ 27. Bell asserts that the indictment should have been quashed by the trial court because it is a violation of the First Amendment of the United States Constitution, as well as a violation of the separation of church and state. More particularly, Bell argues that the language of the indictment violates his rights, and that if this language had not been used the grand jury might not have issued an indictment. The language in contention contained within the indictment reads as follows: "On the date, time, and place aforesaid, Peter Bell did commit the act aforesaid within one thousand, five hundred (1,500) feet of a building commonly known as Morning Star Baptist Church...." Nonetheless, this argument has not been properly preserved for review by this Court. This Court notes that while Bell did make a motion to dismiss the indictment, this particular argument was never raised before the trial court; therefore, this issue is procedurally *256 barred, Colburn v. State, 431 So.2d 1111, 1113-14 (Miss.1983), and accordingly, this issue is without merit.

V. WHETHER THE TRIAL COURT ERRED WHEN IT DENIED BELL'S MOTIONS FOR A DIRECTED VERDICT.
¶ 28. Bell argues that a directed verdict was merited at the conclusion of the State's case because there was lack of a positive identification, no follow-up investigation on the part of the police, and no usable audio or videotape. Essentially, Bell argues that the State failed to prove beyond a reasonable doubt that he was guilty of the crime charged. Again, Bell has failed to cite any law to support his argument; therefore, we do not have to review his claim. Cavett v. State, 717 So.2d 722, 724 (Miss.1998). Nevertheless, we will review the merits of this argument.
¶ 29. Requests for a directed verdict implicates sufficiency of the evidence. Franklin v. State, 676 So.2d 287, 288 (Miss.1996). When the trial court judges the legal sufficiency, as opposed to the weight of the evidence on a motion for a directed verdict, the trial court is required to consider evidence introduced in the light most favorable to the State and accept as true all of the evidence introduced at trial by the State, including all reasonable inferences that may be drawn therefrom. Yates v. State, 685 So.2d 715, 718 (Miss.1996). Any evidence that is favorable to the defendant must be disregarded during the consideration of the trial court in determining whether to grant a motion. Id. at 718.
¶ 30. A review of the record reveals contrary to Bell's argument, there was sufficient evidence to support that Bell was the individual who transferred the cocaine to Holliman, the undercover agent. Holliman testified that he received the drugs from Bell. Officer Shane Corr stated that he went to the area were the transaction occurred and because of the description provided by Holliman, he was able to locate the automobile, and that an individual he knew as Mr. Bell was inside the automobile. Bell also testified that he had known Corr all of his life. Additionally, during Bell's testimony he admitted that his mother had a white Ford LTD with a maroon vinyl top matching the description given of the automobile by Holliman; however, Bell expressed that it was impossible for him to be in his mother's automobile at the time in question because he had his own at this time. Nevertheless, from the identification Officer Corr received from Holliman he assembled several similar photographs, including a picture of Bell. Corr then presented the photographs to Holliman to see if he could make an identification of the individual who sold him the substance. From the photographic lineup, Holliman identified Bell as the perpetrator. Additionally, during the trial testimony of Holliman and Corr, they made a positive identification of Bell. Once Holliman and Corr had identified Bell as the perpetrator, evidence was admitted that the substance purchased by Holliman contained cocaine.
¶ 31. The State presented evidence from a forensic drug chemist who was employed with the Mississippi Crime Laboratory to establish that the substance was cocaine. The chemist testified that she had performed an analysis on the substance and found that it did contain cocaine.
¶ 32. Counsel for Bell attempted to discredit these identifications by suggesting that since the audio/video tape which had been placed in the undercover agent's automobile did not capture Bell it could not have been Bell who committed the crime. Bell's counsel also raised issues over Holliman's failure to immediately arrest Bell, and that no additional information was provided linking Bell to the crime such as a license plate number. Nonetheless, when reviewing the evidence in the light most favorable to the State including all favorable inferences and believing that all the information were true, we determine that there was sufficient evidence for the *257 jury to find Bell guilty and that no error was committed by the trial judge when he denied the motion for directed verdict. Accordingly, this issue is without merit.
¶ 33. THE JUDGMENT OF THE HANCOCK COUNTY CIRCUIT COURT OF CONVICTION OF TRANSFER OF A CONTROLLED SUBSTANCE AND SENTENCE OF THIRTY YEARS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS AS AN HABITUAL OFFENDER IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.
McMILLIN, C.J., KING AND SOUTHWICK, P.JJ., BRIDGES, IRVING, MOORE, MYERS, PAYNE, AND THOMAS, JJ., CONCUR.