# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2021-CA-00080-COA

**JAMES CHRISTOPHER SKINNER**                                              **APPELLANT**

**v.**

**STATE OF MISSISSIPPI**                                                          **APPELLEE**

| | |
|---|---|
| DATE OF JUDGMENT: | 12/16/2020 |
| TRIAL JUDGE: | HON. JOHN H. EMFINGER |
| COURT FROM WHICH APPEALED: | RANKIN COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | JACOB WAYNE HOWARD |
| ATTORNEY FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL BY: CANDICE LEIGH RUCKER |
| NATURE OF THE CASE: | CIVIL - POST-CONVICTION RELIEF |
| DISPOSITION: | AFFIRMED - 05/17/2022 |
| MOTION FOR REHEARING FILED: | 06/12/2022 - DENIED; AFFIRMED - 10/25/2022 |

**EN BANC.**

**LAWRENCE, J., FOR THE COURT:**

### MODIFIED OPINION ON MOTION FOR REHEARING

¶1.     The motion for rehearing is denied.  The original opinion of this Court is withdrawn, and this modified opinion is substituted in its place.

¶2.     This is James Christopher Skinner's third appeal to this Court stemming from his 2011 conviction of felony evasion.  As a result of his conviction, Skinner was sentenced to life without parole as a habitual offender pursuant to Mississippi Code Annotated section 99-19-83 (Rev. 2007).  To sentence Skinner as a habitual offender, the State amended the felony-evasion indictment prior to trial and included two out-of-state juvenile felony convictions and one felony conviction from Rankin County.  Skinner has eight prior felony convictions.

¶3.     In each appeal, Skinner has challenged the constitutionality of his life sentence that resulted from his habitual offender status pursuant to section 99-19-83. This Court affirmed Skinner's convictions and sentence on direct appeal in 2013. *Skinner v. State* (*Skinner I*), 120 So. 3d 419 (Miss. Ct. App. 2013). In 2017, the circuit court summarily dismissed Skinner's motion for post-conviction relief (PCR), and this Court reversed the order and remanded the case because the trial court dismissed the motion before the State filed an answer and before discovery. *Skinner v. State* (*Skinner II*), 270 So. 3d 1046, 1052 (¶20) (Miss. Ct. App. 2018). Following an evidentiary hearing on remand, the circuit court denied Skinner's PCR motion on December 16, 2020. The court found that Skinner's claims were barred by the doctrine of res judicata, that *Miller v. Alabama*, 567 U.S. 460 (2012), was inapplicable to Skinner's sentence, and that the imposition of a life-without-parole sentence did not lead to an inference of gross disproportionality and was not in violation of the procedural and substantive protections of the Eighth and Fourteenth Amendments of the United States Constitution.

¶4.     On January 14, 2021, Skinner appealed the denial of his PCR motion, raising the following issues: (1) whether the circuit court erred by finding that his claims were procedurally barred by res judicata; (2) whether his life-without-parole sentence for his felony-evasion conviction was unconstitutionally disproportionate; and (3) whether the circuit court erred by refusing to consider the mitigating circumstances of his juvenile convictions. After reviewing the record, this Court finds that Skinner's Eighth Amendment claim is barred by the doctrine of res judicata. Procedural bar notwithstanding, Skinner's

2

statutorily imposed sentence as a habitual offender under section 99-19-83 does not violate Skinner's Eighth Amendment right to be free from cruel and unusual punishment. Finally, this Court finds that the circuit court did not err in refusing to consider the mitigation circumstances surrounding Skinner's juvenile convictions. Accordingly, we affirm the circuit court's denial of Skinner's PCR motion.

## FACTS AND PROCEDURAL HISTORY

### I. Skinner's Direct Appeal

¶5. This Court adopts the following statement of facts from the *Skinner I* opinion:

> Around 2:00 a.m. on August 28, 2009, the Brandon Police Department set up a safety checkpoint just off of exit 54 of Interstate 20. During this safety check, a red SUV approached the area. Officer Chad McClain, a patrolman with the Brandon Police Department, signaled for the driver to pull up to where he was checking drivers for a valid driver's license and proof of insurance. Skinner, the driver of the red SUV, pulled the vehicle up near the officer. Officer McClain asked Skinner for his license and proof of insurance. Skinner explained that he did not have his license with him. Officer McClain asked Skinner to drive the vehicle up and park behind another SUV that Officer Josh Arnold, also with the Brandon Police Department, had stopped. Skinner complied.
>
> Thereafter, Officer McClain again approached Skinner's vehicle and requested a form of picture identification. Skinner denied having any picture identification, and Officer McClain asked him to step out of the vehicle. When Skinner asked him "why," Officer McClain replied: "because I asked you to." Skinner explained that he recently had fallen off a ladder at work and had broken some ribs, so he lacked to the ability to get out of his vehicle. Officer McClain opened the driver's door and asked Skinner where he had been that night, to which Skinner replied that he had gone to pick someone up from Club Zodiac. Officer McClain responded that if he could go to a club to pick up a friend, then he could get out of the vehicle. Officer McClain again asked Skinner to remove himself from the vehicle. Officer McClain informed Skinner that he could be charged with disorderly conduct and failure to comply if he did not step out of his vehicle.

3

Officer Arnold overheard the exchange and walked over to Skinner's location. Officer Arnold explained to Skinner that Officer McClain had given him a lawful order with which he needed to comply or he would be pepper sprayed. Skinner continued to argue and refused to get out of his vehicle. Officer Arnold told Skinner that he had until the count of three to step out of his vehicle or he would pepper spray him, and then he began to count. When Officer Arnold counted to two, Skinner punched Officer Arnold in the chest. As a result, Officer Arnold pepper sprayed him. As Officer Arnold sprayed Skinner, Officer McClain tried to reach into the vehicle to pull Skinner out of the vehicle. As he did, Skinner threw the vehicle in drive and punched the gas. Officer McClain testified that Skinner's vehicle dragged him for several feet before he freed himself from the vehicle.

As this occurred, Officer Arnold got into his police vehicle and followed Skinner's vehicle. When Officer McClain freed himself, he also followed Skinner's vehicle. As Skinner drove on Highway 18, Officer McClain observed a red cooler fly out of the passenger's window of Skinner's vehicle. The two officers continued to pursue Skinner's vehicle at a high rate of speed. Both Officer McClain and Officer Arnold testified that Skinner's vehicle's speed at times exceeded 120 miles per hour. Skinner ignored traffic signals and stop signs, and showed a lack of regard for the lines painted on the roadways. At one point, Skinner pulled his vehicle off the road and completed a U-turn. Other law-enforcement agencies were dispatched, and additional officers arrived to aid in the stop of Skinner's vehicle.

Officer McClain testified that Skinner's vehicle finally came to a stop after Skinner swerved, causing him to travel airborne off of the roadway and onto some railroad tracks. Officers thereafter approached the vehicle with their weapons drawn. Simeon Hauer, the passenger of Skinner's vehicle, immediately got out of the vehicle and onto the ground. Officer McClain testified that Skinner continued to struggle and resist, trying to break away from the officers. Several officers from the different law-enforcement agencies worked together to secure Skinner. These officers noticed that Skinner was bleeding and contacted emergency medical personnel.

During his time, the officers noticed Skinner pushing something back toward his buttocks. Officer Arnold testified that when paramedics arrived, the officers pulled down Skinner's pants so that the paramedics could remove whatever Skinner had placed in or near his buttocks. Officer Arnold stated that Skinner clenched his buttocks, and the officers assisted the paramedics in the removal of what appeared to be a coffee filter. The coffee filter was later determined to contain less than .1 gram of methamphetamine.

4

After securing both men, the officers noticed suspicious chemicals in the vehicle and contacted narcotics officers. The officers also located the red cooler previously thrown from the vehicle, which contained items used in the manufacture of methamphetamine.

Hauer, the passenger in Skinner's vehicle, testified at trial about the events from earlier in the night prior to the chase. Hauer testified that he and Skinner had been at two different houses that night with methamphetamine present. Hauer admitted to using methamphetamine, and he testified that he witnessed Skinner making methamphetamine during the night in question. Skinner denied Hauer's allegations.

*Skinner I*, 120 So. 3d at 419-22 (¶¶3-10) (paragraph numbering omitted).

¶6. A Rankin County grand jury indicted Skinner on January 21, 2010, for simple assault on a law-enforcement officer, possession of precursor chemicals or drugs, felony evasion, manufacture of a controlled substance, aggravated assault on a law-enforcement officer, and possession of less than .1 gram of methamphetamine. The State later obtained permission to amend the indictment to charge Skinner as a violent habitual offender pursuant to Mississippi Code Annotated section 99-19-83 based on three prior felonies.[1] More specifically, in 1994, Skinner pled guilty to attempted carjacking with a firearm and aggravated assault in the Escambia County Circuit Court in Florida and was sentenced to four years in the custody of the Florida Department of Corrections. In 2007, Skinner pled

_____

[1] Skinner did not object to the requested amendment. The first felonies used in the indictment were from 1994 when Skinner was fifteen years old, and the third felony was from Rankin County when Skinner was twenty-eight years old. Notably, according to the record, before Skinner was convicted of felony evasion, he had eight felony convictions: (1) burglary of a conveyance in Escambia County; (2) grand theft auto in Escambia County, Florida; (3) grand theft in Escambia County; (4) attempted carjacking with a firearm in Escambia County; (5) aggravated assault with a firearm in Escambia County; (6) carry concealed firearm in Escambia County; (7) felony theft in Alabama in 2001; and (8) possession of a cocaine in Rankin County in 2007. *See Skinner I*, 120 So. 3d at 422 (¶12).

5

guilty to possession of a controlled substance in the Rankin County Circuit Court and was sentenced to eight years in the custody of the Mississippi Department of Corrections (MDOC), with four years suspended and four years to serve.

¶7. The trial on the charge of felony evasion occurred from March 22 to March 25, 2011. The State "[chose] not to go forward" with the counts of manufacture of a controlled substance and aggravated assault on a law-enforcement officer. The jury found Skinner guilty of disorderly conduct and guilty of felony evasion. The jury was deadlocked on the remaining counts—possession of precursor chemicals or drugs and possession of less than one tenth gram of methamphetamine; thus, the circuit court declared a mistrial on both of those counts.

¶8. The court held a sentencing hearing on March 29, 2011. Because Skinner's indictment had been amended prior to trial to include his habitual offender status under section 99-19-83, Skinner faced a mandatory sentence of life in prison without eligibility for parole. Skinner moved for imposition of a sentence that was proportionate to the crimes charged. The circuit court ultimately imposed the mandatory life sentence.[2] The circuit court reasoned that Skinner had been previously convicted of two felonies, which included the 2007 conviction of possession of cocaine and the 1994 convictions of attempted carjacking and aggravated assault with a firearm. The circuit court also stated that the 1994 convictions were both crimes of violence and that section 99-19-83 required that only one of the two prior felonies be a crime of violence. Skinner's post-trial motions were denied, and he

---

[2] The court sentenced Skinner to six months in the Rankin County jail for the misdemeanor conviction of disorderly conduct.

6

appealed. On appeal, he argued, in relevant part, that his mandatory sentence violated his Eighth Amendment right to be free from cruel and unusual punishment. This Court disagreed, finding that "Skinner's sentence of life imprisonment complies with the applicable habitual-offender statute, section 99-19-83." *Skinner I*, 120 So. 3d at 426 (¶25). Accordingly, this Court affirmed Skinner's convictions and sentences. *Id*.

## II. Skinner's PCR Motion

¶9. On September 16, 2016, Skinner filed an application with the Mississippi Supreme Court for leave to file a PCR motion, which was granted. *Skinner v. State*, No. 2014-M-00027 (Miss. May 3, 2017) (panel order). Skinner then filed his PCR motion, requesting that the circuit court vacate his life-without-parole sentence on the grounds that it violated the procedural and substantive protections of the Eighth and Fourteenth Amendments of the United States Constitution and violated Article 2, Section 28 of the Mississippi Constitution. Specifically, Skinner asserted that the circuit court was obligated to give meaningful consideration to the mitigating circumstances of his 1994 convictions because of his age at the time of the crimes committed as a fifteen-year-old pursuant to *Miller v. Alabama*, 567 U.S. 460 (2012). Finally, Skinner requested that he be re-sentenced to a term no greater than five years of imprisonment (the maximum sentence for felony evasion) pursuant to Mississippi Code Annotated section 99-19-81 (Rev. 2007). The State did not respond to Skinner's PCR motion.

¶10. The circuit court entered an order summarily denying and dismissing Skinner's PCR motion on August 1, 2017, finding that there was no authority for Skinner's position that his

Florida juvenile convictions must be considered in light of the *Miller* factors before they could be used to enhance punishment pursuant to the habitual offender statutes. The circuit court also found that Skinner's Eighth Amendment argument, including the improper use of his juvenile convictions, was procedurally barred under the doctrine of res judicata.

### III.    Skinner's First Appeal of the Denial of his PCR Motion

¶11.    Skinner appealed the circuit court's denial of his PCR motion on August 22, 2017. This Court found that the circuit court erred in dismissing Skinner's PCR motion because the dismissal came "before the State filed an answer and before discovery." *Skinner II*, 270 So. 3d at 1051 (¶20). Therefore, this Court found that the circuit court did not follow the procedures of Mississippi Code Annotated section 99-39-19 (Rev. 2015) in determining whether an evidentiary hearing was required. *Id*. Thus, this Court reversed the circuit court's order dismissing Skinner's PCR motion and remanded the case for further proceedings. *Id*.

¶12.    Following a hearing on remand, the circuit court once again denied Skinner's PCR motion on December 16, 2020. The court found that Skinner's claims were barred by the doctrine of res judicata, that *Miller* was inapplicable to Skinner's sentence, and that the imposition of a sentence of life without parole did not lead to the inference of gross disproportionality and was not in violation of the procedural and substantive protections of the Eighth and Fourteenth Amendments of the United States Constitution. Skinner appealed.

### STANDARD OF REVIEW

¶13.    "When reviewing a trial court's denial or dismissal of a motion for PCR, we will only

8

disturb the trial court's factual findings if they are clearly erroneous[.]" *Chapman v. State*, 167 So. 3d 1170, 1172 (¶3) (Miss. 2015). We review questions of law de novo. *Id*.

## ANALYSIS

### I. Res Judicata

¶14. As part of his present appeal before this Court, Skinner asserts that his life-without-parole sentence violates the Eighth Amendment to the United States Constitution. Specifically, Skinner claims that a life-without-parole sentence here is disproportionate and excessive considering the crime for which he was convicted (felony evasion). The State argues that Skinner's Eighth Amendment issue is barred by res judicata, claiming it was litigated and resolved by this Court in Skinner's direct appeal.

¶15. "Rephrasing direct appeal issues for post-conviction purposes will not defeat the procedural bar of res judicata. The Petitioner carries the burden of demonstrating that his claim is not procedurally barred." *Jordan v. State*, 213 So. 3d 40, 42 (¶8) (Miss. 2016) (The defendant raised the claim of the proportionality of his sentence in his direct appeal and again in his PCR motion, and the court found that the issue was barred by res judicata.) (citing *Bishop v. State*, 882 So. 2d 135, 153 (¶48) (Miss. 2004); *see also* Miss. Code Ann. § 99-39-21(3) (Rev. 2020). Further, claims that have been "considered and rejected" or "substantially reviewed" in prior proceedings are barred by the doctrine of res judicata. *Jordan*, 213 So. 3d at 42 (¶8) (citing *Grayson v. State*, 118 So. 3d 118 (Miss. 2013); *Brawner v. State*, 166 So. 3d 22, 23 (Miss. 2012)).

¶16. The question naturally becomes, was the Eighth Amendment issue now raised in this

appeal previously "considered and rejected" by this Court in Skinner's direct appeal? A review of the legally required analysis and our reading the opinion rendered by this Court in 2013 proves that it was. The majority of this Court, in the direct appeal in 2013, summarized the issue and included the following language in its opinion:

> Skinner claims that **his sentence of life without the possibility of parole constitutes cruel and unusual punishment under the Eighth Amendment.** He asserts that his sentence is **wholly disproportionate** to the crimes for which he was convicted: felony evasion, which carries a maximum sentence of five years, and disorderly conduct, which carries a maximum sentence of six months in jail.
>
> Generally, "a sentence that does not exceed the maximum period of time allowed by statute will not be disturbed on appeal." *Cummings v. State*, 29 So. 3d 859, 861 (¶4) (Miss. Ct. App. 2010) (citation omitted). In determining whether a sentence is proportional to the offense, **this Court consider[s] the three factors set forth in *Solem*,** which are:
>
> > (1) the gravity of the offense and the harshness of the penalty; (2) the sentences imposed on other criminals in the same jurisdiction; and (3) the sentences imposed for commission of the same crime in other jurisdictions.
>
> *Brown v. State*, 37 So. 3d 1205, 1218 (¶36) (Miss. Ct. App. 2009) (citation omitted and footnote added). However, this **Court only applies the *Solem* factors "when a threshold comparison of the crime committed to the sentence imposed leads to an inference of 'gross disproportionality.'"** *Id*. (citation omitted).
>
> Skinner's sentence of **life imprisonment complies** with the **applicable habitual-offender statute, section 99-19-83**. "Our supreme court has consistently held that sentences under the habitual-offender statute do not constitute cruel and unusual punishment." *Cummings*, 29 So. 3d at 861 (¶5). The circuit court's order amending Skinner's indictment to charge him as a habitual offender under section 99-19-83 listed Skinner's prior convictions of possession of a controlled substance, attempted carjacking with a firearm, and aggravated assault with a firearm. In light of the gravity of Skinner's current offense and his prior offenses, **the circuit court's imposition of a life sentence fails to give rise to an Eighth Amendment proportionality**

10

**analysis.** Therefore, this Court will not proceed with such an analysis. **Since the record reflects `no gross disproportionality in the sentence**, and the sentence falls within the statutory-maximum period, we **find no abuse of discretion in the sentence** imposed by the circuit court. *See Cummings v. State*, 58 So. 3d 715, 719 (¶19) (Miss. Ct. App. 2011) ("This Court reviews the terms of a sentence under an abuse-of-discretion standard.").

*Skinner I*, 120 So. 3d at 426 (¶¶23-25) (emphasis added) (paragraph numbering omitted).

¶17. In determining whether this Court has previously "considered and rejected" Skinner's Eighth Amendment claim in Skinner's direct appeal, it is imperative that we examine two United States Supreme Court decisions interpreting the Eighth Amendment. In *Solem v. Helm*, 463 U.S. 277 (1983), the United States Supreme Court held that the Eighth Amendment prohibits sentences that are "grossly disproportionate" or "significantly disproportionate" to the defendant's crime. *Id.* at 288, 303. Further, the United States Supreme Court has held that "a court's proportionality analysis under the Eighth Amendment should be guided by objective criteria, including (i) the gravity of the offense and the harshness of the penalty; (ii) the sentences imposed on other criminals in the same jurisdiction; and (iii) the sentences imposed for commission of the same crime in other jurisdictions." *Id.* at 292.

¶18. The United States Supreme Court's decision in *Solem* must now be viewed in light of *Harmelin v. Michigan*, 501 U.S. 957 (1991). *See McGruder v. Puckett*, 954 F.2d 313, 315 (5th Cir. 1992). In *Harmelin*, the United States Supreme Court reviewed a defendant's sentence to life in prison without parole of more than 650 grams of cocaine. *Harmelin*, 501 U.S. at 961. *Harmelin* yielded various opinions from the court. Justice Kennedy's

controlling[3] opinion concluded that *Solem*'s three-prong analysis was not intended to be mandatory but instead was intended to be used only in the "rare case in which a threshold comparison of the crime committed and the sentence imposed leads to an inference of gross disproportionality." *Id.* at 1005. Thus, Justice Kennedy weighed the defendant's crime of possession of 650 grams of cocaine against his sentence to life imprisonment without parole and concluded that the sentence was not grossly disproportionate to the underlying crime. *Id.* As a result, he found it unnecessary to consider the second and third prongs in the *Solem* analysis. *Id.*

¶19.    In *Nash v. State*, 293 So. 3d 265, 269 (¶13) (Miss. 2020), the Mississippi Supreme Court acknowledged that "*Solem* must now be viewed in the light of *Harmelin*. . . ." (Citing *McGruder*, 954 F.2d at 315). Nash received a twelve-year sentence for possessing a cell phone in a correctional facility and argued that his sentence was disproportionate to the crime and violated the Eighth Amendment. *Id.* In reviewing Nash's claim, the Mississippi Supreme Court essentially indicated that *Harmelin* effectively modified the *Solem* analysis. The *Nash* court further indicated that "[t]he controlling opinion [in *Harmelin*] concluded that the Eighth Amendment contains a "**very limited and rarely imposed exception to the**

---

[3] In *McGruder*, the Fifth Circuit succinctly summarized the logic behind classifying Justice Kennedy's opinion as controlling:

> By applying a head-count analysis, we find that seven members of the Court supported a continued Eighth Amendment guaranty against disproportional sentences. Only four justices, however, supported the continued application of all three factors in *Solem*, and five justices rejected it. Thus, this much is clear: disproportionality survives; *Solem* does not.

*McGruder*, 954 F.2d at 316.

**general rule.**" *Id*. (emphasis added) (citing *Ewing v. California*, 538 U.S. 11, 20 (2003) (quoting *Harmelin*, 501 U.S. at 996-72 (Kennedy, J., concurring in part and concurring in judgment)). The Eighth Amendment's "'narrow proportionality principle does not require strict proportionality between a crime and sentence' but rather 'forbids only extreme sentences that are 'grossly disproportionate' to the crime.'" *Id*. (citing *Graham v. Florida*, 560 U.S. 48, 59-60 (2010)). Further, to determine if the defendant's sentence is grossly disproportionate, "**a court must first compare the gravity of the offense to the severity of the sentence**." *Id*. (emphasis added). Finally, *Nash* reiterated *Harmelin*'s holding that the second and third prongs of *Solem* need not be considered unless there exists a "rare case in which a threshold comparison of the crime committed and the sentence imposed **leads to an inference of gross disproportionality**." *Id*. (emphasis added).

¶20.    Upon reviewing *Skinner I* and the instruction the Mississippi Supreme Court gives us concerning *Harmelin,* it is evident that this issue was "considered and rejected." In Skinner's direct appeal, this Court did exactly what *Harmelin* requires by considering the first *Solem* prong, which is a threshold comparison of the crime committed to the sentence imposed.[4]    This Court ultimately determined that "**the record reflects no gross**

---

[4] The dissent, *post* at ¶¶62-64, analyzes the first *Solem* prong solely in relation to Skinner's ninth felony conviction—felony evasion. However, as will be discussed *infra*, this Court "must not address the present offense only, but must also consider the present offense with the Mississippi habitual offender statute if applicable." *Bell v. State*, 769 So. 2d 247, 251 (¶9) (Miss. Ct. App. 2000). When a defendant is sentenced under the habitual offender statute, "his sentence is imposed to reflect the seriousness of his most recent offense, not as it stands alone, but in the light of his prior offenses." *McGruder*, 954 F.2d at 316; *see also Oby v. State*, 827 So. 2d 731, 735 (¶12) (Miss. Ct. App. 2002) ("The correct proportionality analysis for a habitual-offender sentence does not consider the present offense alone, but within the habitual offender statute.").

**disproportionality in the sentence, and the sentence falls within the statutory-maximum period** . . . ." *Skinner I*, 120 So. 3d at 426 (¶25) (emphasis added). Further, this Court ruled Skinner's life sentence "**fails to give rise to an Eighth Amendment proportionality analysis**" because "**the record reflects no gross disproportionality in the sentence.**" *Id.* (emphasis added).

¶21. After review, we find that this issue was clearly raised in the trial court at sentencing, raised in the direct appeal to this Court, and considered and rejected by this Court.[5] As discussed above, the law requires gross disproportionality be evident before a further Eighth Amendment analysis occurs. *See Harmelin*, 501 U.S. 957; *Nash*, 293 So. 3d at 269 (¶13). This Court, in the direct appeal, applied that required analysis, considered Skinner's sentence in light of the crime for which he was being sentenced and his prior felonies made relevant by the habitual offender statute and rejected a disproportionality argument. For these reasons, this Court holds that this issue is procedurally barred by res judicata.

## II.     Eighth Amendment

¶22. Procedural bar notwithstanding, Skinner's sentence does not violate his Eighth Amendment right to be free from cruel and unusual punishment. As stated previously, the *Solem*, *Harmelin*, and *Nash* opinions, when read together, indicate we must begin our

---

[5] The dissent, *post* at ¶53, argues that the Eighth Amendment issue was not considered in the direct appeal because this Court "did not conduct the analysis *Solem* requires." However, as discussed in this opinion, the law requires gross disproportionality be evident before a further Eighth Amendment analysis occurs. *See Harmelin*, 501 U.S. 957; *Nash*, 293 So. 3d at 269 (¶13). The majority in the direct appeal specifically stated in its 2013 opinion that the "record reflects [there was] no gross disproportionality." *See Skinner I*, 120 So. 3d at 426 (¶25).

analysis with a threshold comparison of the crime committed to the sentence imposed. The two other *Solem* prongs are considered if we determine the threshold requirement has been met. "In recognizing this narrow principle, the United States Supreme Court cautioned that 'federal courts should be reluctant to review legislatively mandated terms of imprisonment, and that successful challenges to the proportionality of particular sentences should be exceedingly rare.'" *Nash*, 293 So. 3d at 268 n.5 (quoting *Ewing v. California*, 538 U.S. 11, 20 (2003) (other citation omitted)). Further, the Mississippi Supreme Court makes clear that courts should not interpret or modify a statute to alter its intended legislative effect when a statute's language is plain and unambiguous:

> The courts have **no right to add anything to or take anything from a statute**, where the language is plain and unambiguous. To do so would be intrenching upon the power of the Legislature. Neither have the courts authority to write into the statute something which the Legislature did not itself write therein, **nor can they ingraft upon it any exception not done by the lawmaking department of the government**. *Hamner v. Yazoo Delta Lumber Co.*, 100 Miss. 349, 56 So. 466, 490 (1911).

*Wallace v. Raleigh*, 815 So. 2d 1203, 1208 (¶17) (Miss. 2002) (emphasis added). This Court should not modify or alter statutes passed by the Legislature and held constitutional by the Mississippi Supreme Court and the Fifth Circuit Court of Appeals. To do so requires this Court to perform a legislative function and takes the Court out of its traditional role of following precedent in legal interpretation.[6]

---

[6] The dissent, *post* at ¶65, seeks to impose new legal requirements for the habitual offender statute. The dissent complains that this appellate Court has "no facts" concerning Skinner's plea to a felony charge from July 1994. *Post* at n.24. Finally, the dissent contends that Skinner's "three other convictions, including the attempted carjacking with a firearm and aggravated assault" are the result of a carjacking incident from October 1994 and "under the Mississippi habitual offender statute itself would not be considered as two crimes." *Post*

15

¶23. "[T]o determine if a particular sentence is grossly disproportionate, a court must first compare the gravity of the offense to the severity of the sentence." *Nash*, 293 So. 3d at 269 (¶13). "Only in the exceedingly 'rare case in which this threshold comparison leads to an inference of gross disproportionality' should the court 'then compare the defendant's sentence with the sentences received by other offenders in the same jurisdiction and with sentences imposed for the same crime in other jurisdictions.'" *Id.* (quoting *Graham v. Florida*, 560 U.S. 48, 60 (2010)).

¶24. Skinner was convicted of felony evasion in violation of Mississippi Code Annotated section 97-9-72(2) (Rev. 2006). That section states, in relevant part:

> Any person who is guilty of violating subsection (1) of this section by operating a motor vehicle in such a manner as to indicate a **reckless or willful disregard for the safety of persons or property**, or who so operates a motor vehicle **in a manner manifesting extreme indifference to the value of human life**, shall be guilty of a felony, and upon conviction thereof, shall be punished by a fine not to exceed Five Thousand Dollars ($5,000.00), or by commitment to the custody of the Mississippi Department of Corrections for

at ¶45. Skinner's first felony crimes occurred in July 1994 and the second two crimes of violence occurred in October 1994. Further, Skinner has a 2001 theft conviction from Alabama, a 2007 cocaine possession conviction from Mississippi, and then most recently a ninth felony conviction of felony evasion in Mississippi in 2011. The law in this State does not impose an age limit on convictions in circuit court for crimes of violence for purposes of determining prior convictions under the habitual offender law. Nor does that law require an analysis of the facts or potential defenses surrounding Skinner's previous felony convictions for which he pled guilty to and was sentenced for long ago. The Florida and Alabama courts considered the facts of and potential defenses to those cases and fashioned appropriate sentences for those previous felony convictions. Skinner now asks this Court to ignore those long since adjudicated convictions, and ignore his violent past and his previous convictions in Florida, Alabama, and Mississippi. Interestingly, Skinner and the dissent wants this Court to ignore the seriousness that his ninth felony conviction of felony evasion involved actions that a jury found were "reckless" and "in a manner manifesting extreme indifference to the value of human life." What the dissent argues is simply not the law nor the purpose sought by the Legislature in enacting the habitual offender law.

16

not more than five (5) years, or both.

(Emphasis added).  After being convicted by a jury, Skinner was sentenced as a habitual

offender in accordance with Mississippi Code Annotated section 99-19-83.  That section

provided:

> **Every person convicted in this state of a felony** who shall have been convicted **twice previously** of **any felony** or federal crime upon charges separately brought and arising out of separate incidents at different times and who shall have been **sentenced to and served separate terms of one (1) year or more**, whether served concurrently or not, in any state and/or federal penal institution, whether in this state or elsewhere, and **where any one (1) of such felonies shall have been a crime of violence**, as defined by Section 97-3-2, **shall be sentenced to life imprisonment**, and such sentence shall not be reduced or suspended nor shall such person be eligible for parole, probation or any other form of early release from actual physical custody within the Department of Corrections.

(Emphasis added).

¶25.   This Court reviews the terms of a sentence for an abuse of discretion.  *Cummings v.

State*, 58 So. 3d 715, 719 (¶19) (Miss. Ct. App. 2011).  "[W]here a sentence is within the

prescribed statutory limits, it will generally be upheld and not regarded as cruel and unusual."

*Tate v. State*, 912 So. 2d 919, 933 (¶48) (Miss. 2005).  "However, where a sentence is

'grossly disproportionate' to the crime committed, the sentence is subject to attack on the

grounds that it violates the Eighth Amendment prohibition of cruel and unusual punishment."

*Id*.

¶26.   Notably, "when a court conducts a proportionality analysis under the Eighth

Amendment, it must not address the present offense only, but must also consider the present

offense with the Mississippi habitual offender statute if applicable."  *Bell v. State*, 769 So.

17

2d 247, 251 (¶9) (Miss. Ct. App. 2000) (citing *McGruder v. Puckett*, 954 F.2d 313, 316 (5th Cir. 1992); *see also Oby v. State*, 827 So. 2d 731, 735 (¶12) ("The correct proportionality analysis for a habitual offender sentence does not consider the present offense alone, but within the habitual offender statute.").  In other words, a recidivism statute is not "based not merely on that person's most recent offense but also on the propensities he has demonstrated over a period of time during which he has been convicted of and sentenced for other crimes."[7]  *Baker v. State*, 394 So. 2d 1376, 1379 (Miss. 1981) (citing *Rummel*, 445 U.S. at 284-85). The Mississippi Supreme Court explained the purpose of habitual offender statutes in *Baker*:

> Society is entitled to protection against criminals who habitually wreak unlawful aggression against the lives and property of the law abiding citizens of the state. When a convicted felon has demonstrated incorrigibility to the ordinary modes of punishment, it becomes necessary to seek other means to deter his criminal propensities, and such may be done by the legislature even to the extent of depriving him permanently of his liberty.

*Id.* at 1376.  Further, in the *Baker* opinion, the supreme court repeated Justice Rehnquist's

---

[7] The dissent, *post* at ¶¶59-61, relies on the dissent in *Russell v. State*, No. 2019-KA-01670-COA, 2021 WL 1884144 (Miss. Ct. App. May 11, 2021), *aff'd*, 346 So. 3d 435 (Miss. June 16, 2022), to support its position that Skinner's sentence is grossly disproportionate.  As a member of this Court who joined the dissent, I find *Russell* to be distinguishable for several reasons. First, Russell's last conviction on appeal was possession of marijuana—a three-year felony.  Second, there was no evidence that Russell's prior burglaries involved any actual act of violence, as opposed to Skinner's attempted carjacking with a firearm and aggravated assault with a firearm.  Third, Russell only had three priors, not eight.  Fourth, Russell's possession of marijuana conviction was not far removed from the punishment being a civil fine.  *See Id.* at *7 (¶28) (Wilson, P.J., dissenting).  Fifth, Skinner's felony evasion involved acts that caused a serious risk to law enforcement and innocent civilians.  He was convicted of "reckless" conduct or "manifest extreme indifference to the value of human life."  That is substantially different from having a small quantity of marijuana in one's jean pocket.

18

reasoning in *Rummel v. Estelle* in upholding habitual offender statutes: "This segregation and its duration are based not merely on that person's most recent offense but also on the propensities he has demonstrated over a period of time during which he has been convicted of and sentenced for other crimes." *Id*. (citing *Rummel* 445 U.S. at 284-85). The Mississippi Supreme Court ultimately concluded, "Therefore, we hold that [section] 99-19-83 is constitutional as written and as applied to the present case." *Id*. at 1378-79.

¶27. Both the Mississippi Supreme Court and this Court have affirmed habitual offender sentences under section 99-19-83 for crimes that would otherwise carry a considerably low-level sentence. For example, in *Kelly v. State*, 947 So. 2d 1002, 1003 (¶2) (Miss. Ct. App. 2006), the defendant was sentenced as a habitual offender pursuant to section 99-19-83 for the crime of grand larceny. Prior to his grand-larceny conviction, the defendant was convicted of three charges of armed robbery, one strong-armed robbery, and grand larceny. *Id*. at 1004 (¶5). On appeal, the defendant argued that his mandatory life sentence "was not proportional to the present grand larceny offense." *Id*. This Court disagreed, stating that because Kelly was sentenced within the statutory limits of section 99-19-83, "his sentence was not grossly disproportionate." *Id*. at (¶6).

¶28. In *Wall v. State*, 718 So. 2d 1107 (Miss. 1998), the Mississippi Supreme Court upheld a defendant's mandatory sentence to life without parole as a habitual offender pursuant to section 99-19-83 for possession of a controlled substance. Wall had two prior felonies in Tennessee—aggravated robbery and robbery. *Id*. at 1109 (¶1). On appeal, the supreme court reiterated that the trial judge has "complete discretion" in sentencing a defendant so long as

19

the sentence "does not exceed the maximum term allowed by statute." *Id*. at (¶29) (citing *Hoops v. State*, 681 So. 2d 521, 537 (Miss. 1996)). Additionally, the supreme court noted that it would "use the three-pronged analysis as set forth by the United States Supreme Court in *Solem*, but only when a threshold comparison of the crime committed to the sentence imposed leads to an inference of "gross disproportionality." *Id*. The court ultimately found that because the defendant's sentence was within the limits of the statute, a review of the remaining two *Solem* prongs was not warranted. *Id*.

¶29.     The Fifth Circuit addressed a similar issue interpreting Mississippi law in *McGruder v. Puckett*, 954 F.2d 313, 314 (5th Cir. 1992). In that case, the defendant was sentenced as a habitual offender pursuant to section 99-19-83 for burglary of an automobile. *Id*. The defendant had several prior convictions, including three counts of armed robbery, burglary, and larceny. *Id*. Notably, "[h]is final conviction [] for auto burglary [was] a concededly lesser offense than the earlier offenses." *Id*. at 317. On appeal, the defendant argued his mandatory life sentence was grossly disproportionate to the crime committed. The Fifth Circuit analyzed "whether this severe sentence is grossly disproportionate to the gravity of the **offenses** upon which the sentence is based." *Id*. (emphasis added). Thus, the court recognized that an examination of a habitual offender's sentence under the Eighth Amendment requires more than looking at the latest crime committed. *See e.g.*, *Bell*, 769 So. 2d at 251 (¶9); *Oby*, 827 So. 2d at 735 (¶12). In its analysis, the court discussed the United States Supreme Court's decision in *Rummel v. Estelle*, 445 U.S. 263, 265-66 (1980), which held that a recidivist criminal's mandatory life sentence was not grossly disproportionate

even though he had no "serious" predicate offenses.[8]  *Id*.  The Fifth Circuit ultimately held that "in light of *Rummel*," the defendant's sentence was not "unconstitutionally disproportionate."  *Id*.

¶30.    The Mississippi Supreme Court has stated succinctly that "[a]s long as the sentence is within the limits of the statute, the imposition of such sentence is within the sound discretion of the trial court and **this Court will not reverse it**."  *Wall*, 718 So. 2d at 1114 (¶30) (emphasis added).  Skinner was not sentenced pursuant to the felony evasion statute only.  Rather, his sentence was enhanced due to violating another State statute passed by the Mississippi Legislature.  Section 99-19-83 mandates a life sentence if the defendant (1) is convicted of two previous felonies; (2) is sentenced to and served separate terms of one year or more; and (3) one (1) of such those prior felonies was a crime of violence.  Skinner met all the requisites of the habitual-offender sentencing requirements.[9]  For these reasons, this

---

[8] In *Rummel*, the defendant's offenses included false pretenses, passing a no-account check, and passing a forged check.  445 U.S. at 1133.

[9] Despite the clear language of section 99-19-83, footnote 20 of the dissent's opinion, *post* at ¶61, alleges that Skinner should not have received a life sentence because six of Skinner's prior convictions "stemmed from one incident" and should "count as one for the habitual offender statute."  That is not what that statute says and that is not what happened when Skinner pled guilty.  While Skinner pled guilty to all six crimes at the same hearing, it is clear from the record those crimes were two separate incidents; some of those six occurred in July 1994 and some occurred in October 1994.  Skinner served more than a year in jail for those six crimes, two of which were crimes of violence.  Skinner also pled guilty to a crime in Alabama and later in Mississippi, and served more than a year in jail on each of those felonies.  Section 99-19-83 mandates a life sentence if the defendant (1) is convicted of two previous felonies (Skinner had eight), (2) is sentenced to and served separate terms of one year or more (Skinner served a year or more in three states at three different times); and (3) one of those prior felonies was a crime of violence (Skinner has two crimes of violence).  Thus, Skinner met all three prerequisites.  The arguments posited by the dissent would substantially modify the reach and effect of section 99-19-83.  That

21

Court finds that Skinner's sentence is not grossly disproportionate and is therefore constitutional pursuant to section 99-19-83.

### III. Mitigation of the 1994 Juvenile Convictions

¶31. Skinner also claims in this appeal that "[t]he circuit court erred by refusing to consider the mitigating circumstances of [Skinner's] childhood convictions . . . ." Further, Skinner also alleges that the principles underlying the *Miller v. Alabama*[10] decision should apply to his case and that the trial court should have allowed mitigation as to Skinner's juvenile convictions, which were used for enhancement purposes under the habitual offender statute.

¶32. In *Miller*, the United States Supreme Court held "that the Eighth Amendment forbids a sentencing scheme that mandates life in prison without possibility of parole for **juvenile offenders.**" *Miller*, 567 U.S. at 479 (emphasis added). In *Montgomery v. Louisiana*, 577 U.S. 190 (2016), the Supreme Court further stated that a life sentence should be reserved for "those rare **children** whose crimes reflect irreparable corruption," and that juvenile murderers "whose crimes reflected only transient immaturity" must be deemed parole eligible. *Id*. at 736 (emphasis added). The sentencing hearing Skinner complains about

---

modification should occur in the Legislature, not this Court. Further, in the same footnote, the dissent also makes erroneous conclusions of fact concerning Skinner's crimes of violence. For example, the dissent incorrectly states that Skinner thought the gun "was not loaded." In fact, Skinner told the police that he "didn't even know if the gun was loaded or not . . . ." Further, Kevin Hannon, one of the witnesses to Skinner's crimes, told the police while chasing Skinner, he pointed the gun back at them and Skinner "pulled the trigger and Hannon heard the click of the dry-fire since Skinner did not have a round in the chamber." The police noted in the report of the investigation that the gun Skinner used "did have five rounds in the clip in the gun."

[10] *Miller*, 567 U.S. at 477-78 (holding that certain factors must be considered before a juvenile can be sentenced to mandatory life without parole).

22

occurred after his conviction for felony evading. Skinner was convicted on March 25, 2011, after a jury trial, and was sentenced on March 29, 2011. At that time, Skinner was thirty-two years old. He was not a juvenile. He was an adult. In fact, Skinner turned eighteen in 1997, and this crime happened in 2011, some fourteen years later. Because the *Miller* sentencing requirements apply only to juveniles being considered for a life-without-parole sentence, his arguments are misplaced and legally inapposite. *Miller* sentencing requirements do not apply to adults being sentenced for crimes committed while adults.

¶33. As to Skinner's argument outside of a *Miller* context that the trial court erred by not allowing him to put on evidence of mitigation for his 1994 felony convictions during his 2011 sentencing hearing on felony evasion, that too is misplaced. It is well established that appellate courts review a circuit court's admission or exclusion of evidence and testimony for abuse of discretion. *See Davis v. State*, 183 So. 3d 112, 115 (¶9) (Miss. Ct. App. 2015). Likewise, this Court reviews the imposition of a sentence of under an abuse of discretion standard. *See, e.g.*, *McGilberry v. State*, 292 So. 3d 199, 208 (¶39) (Miss. 2020); *Chandler v. State*, 242 So. 3d 65, 68 (¶7) (Miss. 2018).

¶34. In support of his argument, Skinner cites to *Presley v. State*, 474 So. 2d 612 (Miss. 1985). Not only is *Presley* is clearly distinguishable from this case, the legal reach of *Presley* does not expand as far as Skinner proposes. Presley was convicted of armed robbery and sentenced to serve forty years without parole as a habitual offender pursuant to Mississippi Code Annotated section 99-19-81. *Presley*, 474 So. 2d at 618. When the court asked if Presley had anything further to say before his sentence was imposed, Presley offered

23

nothing. *Id*. at 617-18. Presley appealed his sentence, arguing that his sentence "violated the Eighth Amendment prohibition against cruel and unusual punishment." *Id*. at 617. The Supreme Court found that "an adequate pre-sentencing hearing" was not held because Presley and his counsel failed to present any mitigating evidence when the trial court gave them the opportunity. *Id*. at 620.

¶35. It is important to note that Presley was sentenced under section 99-19-81, not section 99-19-83 as in this case. Further, the supreme court stated, "[T]he record does not indicate anything **relating to the facts of the charges** . . . as to whether there were mitigating circumstances." *Presley*, 474 So. 2d at 619 (emphasis added). The court held, "we recognize that there are cases, even when the appellant and his attorney fail to prepare and complete a sentencing record, where the trial court must consider all facets, background and record in a sentencing hearing in order that a just and proper sentence may be imposed." *Id*. Skinner relies on this quote to support his argument that the trial court should have considered "mitigation" from his 1994 convictions in imposing his 2011 sentence. In his brief, he alleged "outside pressures" and that a thirty-five-year-old "encourag[ed]" him to commit those 1994 crimes. In essence, Skinner attempted to put before the trial court mitigating evidence considering the defense of duress for his 1994 convictions.[11] *Presley* does not stand

___

[11] "In order for duress to be a defense for a criminal charge, the impelling danger must be present, imminent, and impending, and of such a nature as to induce in that person a well-grounded apprehension of death or serious bodily harm if the act is not done." Mississippi Model Jury Instructions (Criminal) § 2:4 (Miss. Judicial Coll. 2018). Under Mississippi law, duress is a "complete defense." *See Brown v. State*, 252 So. 2d 885 (Miss. 1971). While Skinner does not use the word "duress" in his brief before this Court, he does allege "outside pressures" while the dissent alleges "after feeling pressure" when an adult told him to commit the crimes.

for the proposition that trial courts are required to allow into evidence defenses to previous felony convictions disguised as mitigation. When the Florida trial court accepted Skinner's guilty plea in 1994, any potential defenses to that crime were waived. *See Chandler v. State*, 196 So. 3d 1067, 1072 (¶24) (Miss. Ct. App. 2016) (holding that "a 'guilty plea operates as a waiver to all defenses that could have been presented except for those defenses going to the jurisdiction of the sentencing court'") (quoting *Kelley v. State*, 913 So. 2d 379, 383 (¶7) (Miss. Ct. App. 2005)). By claiming the trial court should have considered mitigating evidence of the 1994 convictions, Skinner seeks to re-litigate the facts and defenses for those crimes for which he had already been adjudicated and sentenced. Skinner's defenses to the 1994 convictions should have been used in 1994 and not in 2011 (original sentencing) or 2017 (PCR evidentiary hearing). It would be a stretch of *Presley* to hold that defenses to prior felony convictions are relevant in a sentencing hearing not for that earlier felony, but a felony committed seventeen years later. Therefore, we find the trial court did not abuse its discretion in refusing to consider evidence of a potential defense for Skinner's 1994 convictions in sentencing him in 2011 for felony evasion.

## CONCLUSION

¶36. After review of the record, this Court affirms the circuit court's denial of Skinner's PCR motion. Skinner's Eighth Amendment claim is barred by the doctrine of res judicata. Notwithstanding the procedural bar, Skinner's sentence does not violate his Eighth Amendment right to be free from cruel and unusual punishment. Finally, the circuit court did not err in refusing to consider mitigating circumstances surrounding Skinner's juvenile

25

convictions.

¶37.   **AFFIRMED.**

**CARLTON AND WILSON, P.JJ., GREENLEE AND SMITH, JJ., CONCUR. McCARTY, J., CONCURS IN PART AND DISSENTS IN PART WITH SEPARATE WRITTEN OPINION. McDONALD, J., DISSENTS WITH SEPARATE WRITTEN OPINION, JOINED BY BARNES, C.J., AND WESTBROOKS, J.; McCARTY, J., JOINS IN PART. EMFINGER, J., NOT PARTICIPATING.**

**McCARTY, J., CONCURRING IN PART AND DISSENTING IN PART:**

¶38.   The majority is correct in its ultimate holding "that Skinner's sentence is not grossly disproportionate and is therefore constitutional" under the habitual offender law. *Ante* at ¶30.

¶39.   Yet the approach taken by the majority in reaching this conclusion is too abbreviated. The path does not fully embrace this Court's constitutional duty to ensure compliance with the Eighth Amendment's prohibition of "not only barbaric punishments, but also sentences that are disproportionate to the crime committed." *Solem v. Helm*, 463 U.S. 277, 284 (1983). In this respect, the approach urged in the dissent by Judge McDonald is the far better route, including that the issue is not barred by res judicata by virtue of our earlier decision.

¶40.   Nonetheless, testimony established in Skinner's trial for felony evasion made clear that the crime was violent and posed a threat to the officers and community. Of the law enforcement on the scene, Officer McClain testified that after the defendant declined to show identification or leave his car, the following occurred:

> I reached in to try to grab [Skinner] and pull him out of the vehicle. I had him almost out of the vehicle. He reached back up with his right hand and put the vehicle in drive. I tried to get in and put the gear shift back up to park and he hit the gas and drug me for about 15 feet before I was able to free myself from the vehicle.

26

. . . .

> As he's accelerating with me on the side of the vehicle, I was yelling for him to stop, stop the car. Whenever I finally freed myself right prior to me being able to get my -- my duty belt got hung up on the side of the -- the door[.]

¶41. Due to the nature of this case and the numerous prior convictions, Skinner's sentence was not grossly disproportionate.

¶42. Presiding Judge Wilson has written that "the United States Supreme Court's decisions regarding the Eighth Amendment's 'proportionality' principle are difficult to reconcile and hard to apply in a principled fashion." *Russell v. State*, No. 2019-KA-01670-COA, 2021 WL 1884144, at *8 (¶29) (Miss. Ct. App. May 11, 2021) (Wilson, P.J., dissenting), *aff'd*, 346 So. 3d 435 (Miss. June 16, 2022). While "[w]e do not have to agree with those decisions or attempt to extend them beyond their holdings," we must "apply the Supreme Court's decision and vacate the sentence" when applicable. *Id*. Notwithstanding this difficulty, we must undertake such an analysis since "[t]he Constitution *requires* us to examine [a defendant's] sentence to determine if it is proportionate to his crime." *Solem*, 463 U.S. at 303 (emphasis added).

¶43. In my view, this case presents us with a situation where we should conduct a more thorough analysis to safeguard our constitutional rights but in the end conclude that the sentence does not violate the Eighth Amendment.

**McDONALD, J., DISSENTING:**

¶44. I respectfully dissent from the majority opinion that affirms the denial of Skinner's PCR motion, finds that his Eighth Amendment claim is barred by the doctrine of res judicata,

and, notwithstanding the bar, deems his claims meritless. To the contrary, it is my opinion that this Court did not substantively review Skinner's Eighth Amendment claim in the direct appeal of his conviction; therefore, res judicata does not bar us from considering it now. Moreover, Skinner's sentence of life imprisonment without parole is grossly disproportionate to the maximum five-year sentence that his offense of felony evasion carries, raising the inference of disproportionality. After conducting the substantive analysis of *Solem v. Helm*, discussed *infra*, including the nature of Skinner's youthful offender crimes and the sentencing data of similarly situated defendants, I would hold that Skinner's life-without parole-sentence is unconstitutional.

¶45. The majority recounts the facts underlying Skinner's latest convictions of felony evasion and misdemeanor disorderly conduct. The majority also notes that Skinner previously had committed eight felonies. In fact, six of Skinner's prior convictions occurred when Skinner was fifteen years old. At that time, Skinner pleaded nolo contendere to three charges stemming from a carjacking incident in July 1994 of which we have no facts. The three other convictions, including the attempted carjacking with a firearm and aggravated assault charges that the State used to charge Skinner as a habitual offender, were the result of a single carjacking incident in October 1994, which, under the Mississippi habitual offender statute itself, would not be considered as two crimes.[12] Moreover, the Alabama

---

[12] "Every person convicted in this state of a felony who shall have been convicted twice previously of any felony or federal crime *upon charges separately brought and arising out of separate incidents at different times* . . . ." Miss. Code Ann. § 99-19-83 (Rev. 2007) (emphasis added). In footnote 8, the majority is considering all six of the charges Skinner faced in 1994—three from July and three from October. However, the State of Mississippi *did not* indict Skinner on the basis of all six, but only on two of the charges in the single

conviction mentioned in footnote 12 was not included in the amended indictment as a basis for the habitual offender charge, nor was it considered by the court that sentenced him.

¶46.    Another significant fact from this record is that after Skinner was sentenced to life without parole for the felony conviction charge which carries a maximum of five years in prison,[13] Skinner immediately filed a post-trial motion asking for resentencing and raising his Eighth Amendment claim.  Skinner filed a motion for judgment notwithstanding the verdict (JNOV) or, alternatively, a new trial, and two motions to supplement the record to include information about his childhood convictions in Florida and information about the sentence imposed on a similarly situated Mississippi defendant for comparison purposes. Skinner also attached an affidavit to the filing in support of the motion, which described what happened on night of the crimes in 1994.  Had the State not used his 1994 youthful convictions, at most, he would have been charged as a habitual offender under section 99-19-81,[14] which mandates the imposition of the maximum sentence for the charged crimes when

_____

carjacking incident in October.

[13] "Any person who is guilty of violating subsection (1) of this section by operating a motor vehicle in such a manner as to indicate a reckless or willful disregard for the safety of persons or property, or who so operates a motor vehicle in a manner manifesting extreme indifference to the value of human life, shall be guilty of a felony, and upon conviction thereof, shall be punished by a fine not to exceed Five Thousand Dollars ($5,000.00), or by commitment to the custody of the Mississippi Department of Corrections for not more than five (5) years, or both."  Miss. Code Ann. § 97-9-72(2) (Rev. 2020).

[14] "Every person convicted in this state of a felony who shall have been convicted twice previously of any felony or federal crime upon charges separately brought and arising out of separate incidents at different times and who shall have been sentenced to separate terms of one (1) year or more in any state and/or federal penal institution, whether in this state or elsewhere, shall be sentenced to the maximum term of imprisonment prescribed for such felony unless the court provides an explanation in its sentencing order setting forth the

29

the prior felonies are nonviolent. Thus, Skinner would only be sentenced to the maximum of five years for the felony-evasion conviction. The circuit court denied Skinner's motion for JNOV or a new trial, as well as his motion to supplement the record, so this Court did not have that information to consider on appeal.

¶47. Also, Skinner attached several exhibits to his thirty-three-page PCR filing numerous exhibits. In his personal affidavit, Skinner pointed out that he was only fifteen years old at the time of his 1994 charges, that he acted on instructions from older co-defendants, and that no one was physically harmed during the incident.[15] Skinner also attached Exhibits A-D (containing sentencing information on his Rankin County conviction); Exhibits E-G

_____

cause for deviating from the maximum sentence, and such sentence shall not be reduced or suspended nor shall such person be eligible for parole or probation." Miss. Code Ann. § 99-19-81 (Rev. 2007).

[15] According to Skinner's affidavit, on the evening of October 24, 1994, he and another fifteen-year-old (Thomas Morton) called their nineteen-year-old friend, Willie Earl Dwiggins, to get a ride. Skinner and his friend snuck out of Skinner's bedroom window. When Dwiggins came to pick them up, he had two older men in the car with him, thirty-five-year-old James "Lamar" Boyington and Lamar's twenty-seven-year-old brother, Billy Boyington. Lamar began talking about how he wanted to "jack somebody and take their car," meaning he wanted to rob someone for their vehicle. Lamar offered Skinner $1,000 to steal a car, which Skinner eventually accepted after feeling pressured.

Lamar gave Skinner a gun and directed him to steal a nearby truck and take it to an apartment complex so that Lamar could take the truck from there. Skinner got out of Dwiggins's car and walked up to three men who were standing by the truck. He pointed the gun towards them, demanded the keys and told the men to "scat." The men began to run and yell for the police. When Skinner got into the truck, he realized that he did not know how to start the vehicle, and he took off running. Two of the three men who were initially standing by the truck, joined by other bystanders, chased Skinner and held him until the police arrived.

After Skinner pleaded nolo contendere to these charges and charges from a prior incident, the circuit court sentenced Skinner as a youthful offender pursuant to Florida law. Skinner served his sentence in a youthful correctional facility.

(containing information on his Florida convictions); Exhibits H-L (transcript excerpts from Skinner's 2011 trial); Exhibit M (Skinner's medical records following his 2011 arrest);[16] Exhibits N-P (additional transcript excerpts from Skinner's 2011 trial); Exhibit Q (Skinner's motion for JNOV or, alternatively, a new trial); Exhibit R (transcripts from Skinner's sentencing on his felony evasion and disorderly conduct convictions); Exhibit S (a certified public record of Thomas Christopher Morton's deposition concerning Skinner's 1994 charges); Exhibit T (a certified record of the inmates in MDOC custody who, as of August 30, 2018, were serving a sentence for felony evasion, in violation of Mississippi Code Annotated section 97-9-72 (Rev. 2006)); and Exhibit U (a Fair Punishment Project Fact Sheet: Nonviolent Life Without Parole). These exhibits are pertinent to the analysis of Skinner's Eighth Amendment claim.

## I. Res judicata does not bar Skinner's Eighth Amendment claim.

¶48. Skinner argues that his claims are not procedurally barred by res judicata because they involve the fundamental right to be free from an illegal sentence. I agree because "[t]he right to be free from an illegal sentence is a fundamental right not subject to the time-bar or res judicata." *Hughes v. State*, 106 So. 3d 836, 840 (¶10) (Miss. Ct. App. 2012) (citing *Kennedy v. State*, 732 So. 2d 184, 186-87 (¶¶7-8) (Miss.1999)). Moreover, his Eighth Amendment claim was not substantively reviewed by this Court in the direct appeal of his conviction and thus not barred by res judicata.

---

[16] Even though Officer McClain testified that Skinner's vehicle "dragged him for several feet," McClain claimed no injury. In fact, it was Skinner who ended up hospitalized for seven days from injuries he sustained after the officers apprehended him.

31

## A. Fundamental Right

¶49. This Court held that the claim of a fundamental right violation is not barred by res judicata in *White v. State*, 157 So. 3d 116, 118 (¶6) (Miss. Ct. App. 2015). In that case, White had pled guilty to the rape of a minor and was sentenced to life imprisonment. *Id*. at 117 (¶1). He later raised the illegality of his sentence in a writ of habeas corpus, which the circuit court dismissed. *Id*. White subsequently filed a PCR motion, alleging again that he was serving an illegal sentence. *Id*. The circuit court dismissed White's PCR motion. *Id*. at 118 (¶3). On appeal, the State argued that White's claim was precluded by res judicata. *Id*. at (¶5). This Court stated the following:

> The State would have us hold that White's claim of an illegal sentence is barred by res judicata, as White has made the same claim in a prior writ. Under ordinary principles of res judicata, that would be correct. *See, e.g., Bosarge v. State*, 141 So. 3d 24, 26 (¶6) (Miss. Ct. App. 2014). *However, White has alleged that he is being held under an illegal sentence, which would be the violation of a fundamental constitutional right*.

*Id*. at (¶6) (emphasis added). Further, we stated that "[c]laims of constitutional dimensions are excepted from common-law res judicata." *Id*. (quoting *Smith v. State*, 149 So. 3d 1027, 1032 (¶13) (Miss. 2014), *overruled on other grounds by Pitchford v. State*, 240 So. 3d 1061, 1070 (¶49) (Miss. 2017)). Thus, we held that the claim of an illegal sentence was not procedurally barred, and we analyzed the appellant's issue on the merits. *Id*. at 119 (¶8). I believe that the same should be done in this case.

## B. Substantive Review

¶50. Res judicata precludes consideration of an issue in a subsequent proceeding only if the prior proceeding substantially addressed and decided it. The Mississippi Supreme Court

32

stated as much in *Brown v. State*, 306 So. 3d 719, 729 (¶15) (Miss. 2020). In that PCR case, Brown had appealed his capital murder conviction and filed an initial PCR motion. *Id*. at 728 (¶10). The merits of his ineffective-assistance-of-counsel claim were eventually decided by the supreme court. *Id.* Brown then filed a second PCR motion. *Id*. at 729 (¶11). The supreme court held, among other things, that several of Brown's claims, including his claim of ineffective assistance of counsel, "have been *substantially* reviewed in prior proceedings and are now procedurally barred by the doctrine of res judicata." *Id*. at 729 (¶15) (emphasis added). The Court cited *Grayson v. State*, 118 So. 3d 118, 136 (¶47) (Miss. 2013), which barred consideration of an ineffective assistance of counsel claim because it had been previously "considered and rejected." *Brown*, 306 So. 3d at 729 (¶15). In this case, Skinner's Eighth Amendment fundamental-rights claim should not be barred by res judicata because it was not substantially reviewed in his direct appeal.

¶51. In determining whether a sentence violates the Eighth Amendment because it is disproportionate to the crime committed, a court first looks to the gravity of the offense and the harshness of the penalty. *Solem v. Helm*, 463 U.S. 277, 290-91 (1983). This threshold analysis involves a comparison between the maximum penalty for the current offense charged and the sentence actually imposed. In *Solem*, even though the defendant was sentenced under a habitual offender statute, the Supreme Court first recognized that the maximum penalty for Helm's current offense of uttering a bad check (five years) far exceeded the sentence Helm received (life without parole). *Id*. at 281. The Supreme Court then moved beyond the threshold analysis to a more complete disproportionality analysis.

It said that courts could then look at sentences imposed on other criminals in the same jurisdiction. *Id.* at 290-91. "If more serious crimes are subject to the same penalty, or to less serious penalties, that is some indication that the punishment at issue may be excessive." *Id*. at 291. Third, the Supreme Court said courts can compare sentences imposed for the same crime in other jurisdictions. *Id.* In *Nash v. State*, 293 So. 3d 265, 269 (¶13) (Miss. 2020), the Mississippi Supreme Court specifically said that the later United States Supreme Court decision of *Harmelin v. Michigan*, 463 U.S. 277 (1983), did not overrule *Solem*, although both decisions did note that successful Eighth Amendment disproportionality challenges may be rare. The Mississippi Supreme Court went on to reiterate that "to determine if a particular sentence is grossly disproportionate, a court must first compare the gravity of the offense to the severity of the sentence." *Id*.

¶52.    In this case, Skinner has provided evidence in his PCR motion that he addresses each of the *Solem* criteria. Some of this evidence (information concerning the childhood convictions in Florida and information about the sentence of a similarly situated Mississippi defendant) was not admitted into evidence by the circuit court when Skinner sought reconsideration of his sentence in his JNOV motion and moved to supplement the record. Nor was it considered by this Court on appeal. Instead, in rejecting consideration of Skinner's Eighth Amendment claim in Skinner's direct appeal, this Court held that Skinner's sentence was not disproportionate simply because life imprisonment without eligibility for parole was specifically provided for in the habitual offender statute, and went no further.

¶53.    The majority agrees with the *Solem* criteria but asserts when considering Skinner's

34

direct appeal, this Court substantively ruled on Skinner's Eighth Amendment claim and the issue is now barred from consideration by res judicata. However, the Eighth Amendment analysis that this Court made in Skinner's direct appeal was incomplete and did not constitute full consideration of his claim. Although it cited *Solem*, this Court did not conduct the analysis *Solem* requires. It stopped when it found that Skinner's sentence of life imprisonment complied with the applicable habitual-offender statute, section 99-19-83. *Skinner v. State* (*Skinner I*), 120 So. 3d 419, 426 (¶25) (Miss. Ct. App. 2013).

¶54. It is critical to use the correct comparison of crime to sentence to make the threshold determination of an inference of disproportionality. In *Solem*, the Supreme Court compared Jerry Helm's crime of passing a false check, *Solem*, 463 U.S. at 281, 296, to the sentence that ordinarily could be imposed for such an offense, five years' imprisonment. *Id*. at 281. But like Skinner, Helm had been sentenced to life without parole under South Dakota's habitual offender statute. *Id*. at 296. The Supreme Court pointed out, however, that mandatory sentencing for recidivists should not be just rotely applied. The Court explained:

> Helm, of course, was not charged simply with uttering a "no account" check, but also with being an habitual offender. And a State is justified in punishing a recidivist more severely than it punishes a first offender. *Helm's status, however, cannot be considered in the abstract*. His prior offenses, although classified as felonies, were all relatively minor. All were nonviolent and none was a crime against a person.

*Id*. at 296-97 (emphasis added).[17] Clearly, in cases where a defendant is sentenced as a

---

[17] The majority cites *Nash v. State*, 293 So. 3d 265 (Miss. 2020), as support for the limited review this Court performed in Skinner's direct appeal. However, *Nash* is factually different from this case and inapplicable. In *Nash*, the defendant was convicted of possessing a cell phone in prison and sentenced to twelve years in prison. *Id*. at 266 (¶1).

habitual offender, *Solem* requires more than a robotic application of the statute based only on the formal names of the prior charges. *Solem* requires an examination of the nature and circumstances of the prior felonies to determine whether the most serious sentence short of death is warranted. In this case, the sentencing court refused to consider the proof Skinner attempted to put into evidence so that the court could consider the nature of his prior offenses. Thus, on appeal, this Court had no information about them and simply compared the sentence he received to the sentence authorized by the habitual offender statute, saying that "Skinner's sentence of life imprisonment complies with the applicable habitual offender statute, section 99-19-83." *Skinner I*, 120 So. 3d at 426 (¶25). We noted that Skinner had committed crimes within the purview of the habitual offender statute and we went no further. *Id*. We held,

> In light of the gravity of Skinner's current offense and his prior offenses, the circuit court's imposition of a life sentence fails to give rise to an Eighth Amendment proportionality analysis. *Therefore, this Court will not proceed with such an analysis.*

The statute he violated, Mississippi Code Annotated section 47-5-193 (Rev. 2015), provided for a punishment of three to fifteen years in prison upon conviction. *Id*. at 267 (¶4). *Nash was not charged or convicted as a habitual offender. Id. Thus, in considering Nash's Eighth Amendment challenge, the Supreme Court needed only* to compare the severity of his offense (having a cell phone in prison) with the twelve-year sentence he received (which was within the crime's statutory sentence range). *Id*. at 268 (¶11). It concluded that Nash's sentence was not grossly disproportionate because it was within the statutory limits provided for the crime of possession of a cell phone while in prison. *Id*. at 270 (¶17). The Court did not need to consider the additional factor of sentencing under a habitual offender statute. Accordingly, *Nash* is inapplicable to this case. Were Skinner's case similar to Nash's, and were he not charged as a habitual offender, we would have to conclude that his life-without-parole sentence compared to the five-year maximum penalty for felony evasion, was grossly disproportional. In Skinner's direct appeal, however, we incorrectly compared his sentence to the statutory sentence set out in the habitual offender statute.

36

*Id.* (emphasis added).

¶55.   Thus, I cannot agree with the majority that there was any substantial review of Skinner's Eighth Amendment claim in his direct appeal.  Being sentenced to life without parole for a crime that carries a maximum of five years in prison is starkly and grossly disproportionate.  We should have examined Skinner's claim further. Therefore, I would hold that res judicata should not bar our consideration of it now.[18]

## II.    Skinner's sentence violates the Eighth Amendment.

¶56.   Skinner argues that his mandatory life-without-parole sentence is grossly disproportional to the maximum sentence for the crime of felony evasion, giving rise to an Eighth Amendment claim.  He further argues that the circuit court should not have used his youthful convictions from over fifteen years ago to automatically sentence him as a habitual offender under section 99-19-83, and that after a full *Solem* analysis, his life-without-parole sentence is unconstitutional.  I agree.

¶57.   The United States Supreme Court provided guidance on the procedure for determining whether a sentence is unconstitutionally disproportional in *Solem*, 463 U.S. at 290-92.  There the Supreme Court held that a sentence may not be disproportionate to the crime committed, regardless of whether the crime is a felony or a misdemeanor.  *Id*. at 292. Thus, if a sentence

---

[18] Additionally, this Court has held that the Mississippi Supreme Court's permission to proceed with a PCR motion is a finding of a prima facie case. *Pittman v. State*, 20 So. 3d 51, 53 (¶8) (Miss. Ct. App. 2009).  In the case at bar, Skinner's issues and all relevant information was put before our supreme court, which would not have granted Skinner's application for leave to file a PCR motion if the court did not find a prima facie case. Therefore, because our supreme court granted Skinner's application for leave to file his PCR motion—thus making a prima facie finding—and because Skinner's claim is a fundamental right, it is not barred by res judicata.

is disproportional to the crime committed, then it violates the Eighth Amendment. *Id*. at 303. In *Solem*, Helm had been convicted of six felonies in South Dakota, including three convictions of third-degree burglary in 1964, 1966, and 1969; a conviction of obtaining money under false pretenses in 1972; a conviction of grand larceny in 1973; and a conviction of third-offense DUI in 1975. *Id.* at 277-80. In 1979, Helm was convicted of his seventh felony, passing a forged check, which ordinarily carries a maximum sentence of five years imprisonment. *Id.* at 281. However, under South Dakota's habitual offender statute,[19] Helm was sentenced to life imprisonment without the possibility of parole. Helm committed all his crimes when he was an adult.

¶58. As previously noted, the *Solem* Court identifies the criteria courts should use in determining whether a sentence is proportional under the Eighth Amendment, stating:

> [A] court's proportionality analysis under the Eighth Amendment should be guided by objective criteria, including (i) the gravity of the offense and the harshness of the penalty; (ii) the sentences imposed on other criminals in the same jurisdiction; and (iii) the sentences imposed for commission of the same crime in other jurisdictions.

*Id*. at 292. Further, the Supreme Court stated that when engaging in the three-part test, "[c]omparisons can be made in light of the harm caused or threatened to the victim or to society, and the culpability of the offender." *Id.* at 278. The Supreme Court held that Helm's

___

[19] Under South Dakota's habitual offender statute, "[w]hen a defendant has been convicted of at least three prior convictions in addition to the principal felony, the sentence for the principal felony shall be enhanced to the sentence for a Class 1 felony." *Id*. (quoting S.D. Codified Laws § 22-7-8 (1981)). The maximum penalty for a "Class 1 felony" was life imprisonment in the state penitentiary and a $25,000 fine. *Id*. (quoting S.D. Comp. Laws Ann. § 22-6-1(2) (1967 ed. Supp. 1978) (now codified at S.D. Codified Laws § 22-6-1(3) (Supp. 1982)).

sentence of life without the possibility of parole was significantly disproportionate to his crime and therefore was prohibited by the Eighth Amendment:

> Applying objective criteria, we find that Helm has received the penultimate sentence for relatively minor criminal conduct. He has been treated more harshly than other criminals in the State who have committed more serious crimes. He has been treated more harshly than he would have been in any other jurisdiction, with the possible exception of a single State.

*Id.* at 303.

¶59. The *Solem* opinion has not been overruled, and its three factor test was cited by this Court as recently as last year in *Mapp v. State*, 310 So. 3d 335, 338 (¶7) (Miss. Ct. App. 2021). As noted in the dissent in *Russell v. State*, No. 2019-KA-01670-COA, 2021 WL 1884144 (Miss. Ct. App. May 11, 2021) (Wilson, P.J. dissenting), *aff'd* 346 So. 3d 435 (Miss. June 16, 2022), "as 'a decision of the United States Supreme Court,' *Solem* is clearly 'binding on the tribunals and citizens of the respective states in comparable cases.'" *Id*. at *6 (¶24) (quoting *Bolton v. City of Greenville*, 253 Miss. 656, 178 So. 2d 667, 672 (1965)). Thus, *Solem* must be applied in a case such as Skinner's where the difference between the sentence imposed (life without parole) differs so greatly from the maximum sentence for his crime (five years).

¶60. The reasoning of the dissent in *Russell* is applicable to the case at hand. There, a Forest County jury found Russell guilty of possession of marijuana in an amount greater than 30 grams but less than 250 grams in 2019. *Id*. at *2 (¶5). Russell had two prior felony convictions, including two burglary-of-a-dwelling convictions in 2004 and a possession-of-a-firearm-by-a-felon conviction in 2015. *Id*. at *1 (¶1). Using Mississippi Code Annotated

section 99-19-83, the circuit court sentenced Russell to life in prison without eligibility for parole in the custody of the MDOC. *Id*. at \*2 (¶5). In the 5-5 decision, the lead opinion upheld Russell's sentence, but the dissent (written by Presiding Judge Wilson and joined by four other judges) felt that Russell's sentence was grossly disproportionate based on *Solem*. *Id*. at \*8 (¶29). It correctly compared the punishment provided in the statute defining the crime to the punishment imposed. Normally, a possession of marijuana between 30 and 250 grams is punishable by no more than three years imprisonment, but the circuit court used the violent habitual offender statute to sentence Russell to life without eligibility for parole. *Id*. at \*5 (¶18). In *Solem*, the defendant, Helm, was convicted of uttering a "no account" check for which maximum penalty would have been five years imprisonment and a fine. *Solem*, 463 U.S. at 281. However, he was sentenced to life imprisonment under South Dakota's habitual offender statute. *Id.* The *Russell* dissent pointed out that Russell was convicted of simple possession of more than 30 grams but less than 250 grams of marijuana which carried a sentence of not more than one year in jail with a fine, but he was sentenced to life without parole under Mississippi's habitual offender statute. *Russell*, 2021 WL 1884144 at \*5 (¶¶17-18) (Wilson, P.J., dissenting). Judge Wilson wrote:

> And while no two cases are exactly alike, the facts and the question presented in *Solem* are not materially distinguishable from the facts and the question presented in this case. That is, this is a "comparable case," and we are therefore bound to follow *Solem* and vacate Russell's life without parole sentence.

*Id*. at \*6 (¶24).

¶61.    The *Russell* dissent then examined the nature of Russell's criminal history that had

40

resulted in the life sentence. It reasoned that Russell's prior burglaries did not involve actions of violence because Russell was sentenced to the Regimented Inmate Discipline Program and probation. *Id*. at *5 (¶20). Further, the dissent stated that there was nothing to suggest that Helm's burglaries in *Solem* were any less serious or violent than Russell's two burglaries. *Id*. Thus, Russell's criminal history was not worse than that of the defendant in *Solem. Id*. at *7 (¶28). The dissent concluded:

> Thus, this case is not materially distinguishable from *Solem* based on the gravity of Russell's present offense, the extent or seriousness of his prior criminal history, the severity of the punishment he received, or any other material fact. Accordingly, the result must also be the same.

*Id*. at (¶25).[20]

¶62. Skinner's case is also comparable to *Solem* beginning with the comparison of the maximum sentence for his crime of felony evasion to the life-without-parole sentence

---

[20] The majority argues that *Russell* is factually distinguishable and inapplicable, because Russell's last conviction was a three-year felony (possession of marijuana). But Skinner's last felony conviction carried a five-year sentence, only two years more than Russell's. The majority also says that there was no evidence that Russell's prior burglaries involved an actual act of violence. But here the proof showed that Skinner committed prior crimes of carjacking with a firearm and aggravated assault. Not to minimize Skinner's actions, he was fifteen years old at that time when he approached a vehicle with a gun he thought was not loaded and told the adults to "Scat." Fortunately, no one was injured, and, rather than using the gun, Skinner fled with his victims in pursuit. Since that time, Skinner has not been convicted of any "violent crime." The majority also says Russell had only two prior convictions compared to Skinner's eight. But six of those charges to which Skinner plead nolo contendere stemmed from the one incident when he was fifteen. Under the habitual offender statute, section 99-19-83, the prior charges have to arise "out of separate incidents at different times." Accordingly, Skinner's six charges count as one for the habitual offender statute.

41

Skinner received. In this case, felony evasion is not a crime of violence.[21] Even considering the underlying facts of Skinner's charges, they still only constituted felony evasion which our legislature has determined warrants a maximum sentence of five years' imprisonment and a fine.[22] But because Skinner was charged as a habitual offender, he was sentenced to a mandatory life term without eligibility for parole. When compared to the maximum five-year penalty for a felony evasion conviction, Skinner's life-without-parole sentence raises an inference of disproportionality. *Harmelin*, 501 U.S. at 1005 (Kennedy, J., concurring). We agree with the majority that courts should consider a defendant's prior offenses in determining the ultimate penalty imposed because that is what the law requires. However, we disagree about where the analysis of that ultimate penalty should start. *Solem* requires that courts initially compare the present offense and the penalty attached to it, to the harshness of the ultimate sentence imposed.

---

[21] Crimes of violence in Mississippi are defined in Mississippi Code Annotated section 97-3-2 (Rev. 2020) and include driving under the influence, murder and attempted murder, aggravated assault, manslaughter, killing of an unborn child, kidnaping, human trafficking, poisoning, rape, robbery, sexual battery, drive-by shooting or bombing, carjacking, felonious neglect, abuse or battery of a child, burglary of a dwelling, use of explosives or weapons of mass destruction, statutory rape, exploitation of a child, gratification of lust, and shooting into a dwelling as provided in section 97-37-29.

[22] Mississippi Code Annotated section 97-9-72(2) provides:

> Any person who is guilty of violating subsection (1) of this section by operating a motor vehicle in such a manner as to indicate a reckless or willful disregard for the safety of persons or property, or who so operates a motor vehicle in a manner manifesting extreme indifference to the value of human life, shall be guilty of a felony, and upon conviction thereof, shall be punished by a fine not to exceed Five Thousand Dollars ($5,000.00), or by commitment to the custody of the Mississippi Department of Corrections for not more than five (5) years, or both.

¶63. Like Helm, Skinner's case is complicated because he was not sentenced under the felony evasion statute; instead he was sentenced under one of Mississippi's habitual offender statutes, section 99-19-83. With no information other than the dates and the titles of the Skinner's prior felonies, and the fact that one of the charges in 1994 was a "violent" crime, the circuit court automatically sentenced Skinner to life in prison without parole. A dilemma arises because under section 99-19-83, as under section 99-19-81, "it appears that the trial court, as a matter of state statutory law, has no sentencing discretion." *Pulliam v. State,* 328 So. 3d 93, 100 (¶29) (Miss. 2021) (citing *Clowers v. State*, 522 So. 2d 762, 764 (Miss. 1988)). However, the Mississippi Supreme Court acknowledged that even under such statutes, which I agree have been held constitutional as written, there are rare circumstances where a mandatory maximum sentence would be constitutionally disproportional" and "the trial court has the constitutional authority to impose a lesser sentence." *Id.* at (¶30).

¶64. Despite this clear authorization by our Supreme Court to go further in our analysis of life without parole or mandatory sentencing pursuant to these statutes, the majority simply finds that because Skinner's criminal history met the literal requirements of section 99-19-83, his sentence of life without parole is not grossly disproportionate. The majority fails to make the threshold comparison necessary to determine the inference of disproportionality, and then further fails, as *Solem* requires, to examine the crimes that the State relied upon to charge Skinner as a habitual offender and consider the other sentencing evidence that Skinner provided.

¶65. The majority cites language from *Baker v. State*, 394 So. 2d 1376 (Miss. 1981), which

43

explains the purpose of the habitual offender statute. *Ante* at ¶26. This includes the need to protect the public from criminals who "habitually wreak unlawful aggression against the lives and property of law abiding citizens" and who have shown themselves to be incorrigible despite ordinary modes of punishment. I do not disagree with this, but I find it inapplicable to Skinner. In this case, the sentencing court refused Skinner's request to provide information about the circumstances surrounding his youthful offender crimes and neither it nor the majority made any findings that Skinner posed such a threat to the public. In fact, Skinner's only allegedly "violent" crime happened in 1994; since then he has not committed any other violent crime. His only offense prior to the latest felony evasion charge, was a non-violent drug conviction.[23] I would not impose any new legal requirements on the habitual offender statute as the majority suggests. I only contend that when a showing of a disproportionate sentence is presented, our court proceed as did the supreme court did in *Solem*, and fully examine the prior crimes that the State raised when it amended the

---

[23] The cases the majority cites for appellate approval of a life-without-parole sentence include *Kelly v. State*, 947 So. 2d 1002, 1004 (¶4) (Miss. Ct. App. 2006) (Kelly's prior convictions included guilty pleas to three charges of armed robberies, one strong-arm robbery, and one other grand larceny charge.); *Wall v. State*, 718 So. 2d 1107, 1114 (¶30) (Miss. 1998) (Wall had been previously convicted of robbery in 1991 or 1992; of armed robbery (a crime of violence) in 1992; and possession of a controlled substance in 1996.); *McGruder v. Puckett*, 954 F.2d 313, 314 (5th Cir. 1992) (McGruder had previously been found guilty of two counts or armed robbery in 1954; guilty of burglary and larceny in 1957; guilty of escaping from the penitentiary in 1957; and guilty of armed robbery in 1964.). None of these defendants were juveniles at the time of their prior felony charges. Moreover, their prior offenses were all committed relatively close in time to the crime for which they were sentenced, not seventeen years earlier as in Skinner's case.

indictment in Skinner's case.[24]    Based on the majority's analysis, when a defendant is indicted under the section 99-19-81, there will always be a sentence of life without parole, despite *Solem.*

¶66.    Skinner also presented information concerning sentences imposed on others similarly situated which the sentencing court refused to consider.  Skinner provided that information and more in his PCR motion, which I find compelling.

¶67.    Significantly, as previously noted, six of Skinner's eight prior felonies, including the two "violent crimes," arose from one carjacking incident when he was fifteen years old.  Skinner was not convicted of these offenses, but he pled nolo contendere and served his time in Florida's youthful offender system.  The deposition testimony and affidavits describing the carjacking incident, which was not contested by the State in its response to Skinner's PCR motion, show that Skinner was clearly influenced and directed by an older adult to commit the crime; that he was so inexperienced, that he told the adult victims to "[s]cat" and then could not even start the vehicle; and that he ran and was pursued by his victims before he was apprehended.  No one was injured and Skinner pled nolo contendere without admitting guilt. He was sentenced by a Florida court to serve in their youthful offender program, indicating that the court there considered the nonviolent nature of his offenses.  However, years later in Mississippi, Skinner was sentenced to life without eligibility for

---

[24] In footnote 6, the majority does not explain exactly how my analysis would change the requirements of the habitual offender statute, but makes an impassioned argument for jailing Skinner and throwing away the key.  It brings up every criminal incident in Skinner's life, including ones that were not the basis for his life-without-parole sentence, i.e., an Alabama conviction and the July 1994 carjacking convictions when he was fifteen.  The record contains no facts surrounding these convictions.

parole under the habitual offender statute without the circuit court's examining the facts and mitigating circumstances around his prior youthful offenses. Our Rules of Evidence even limit the use of juvenile adjudications for impeachment purposes. "Reasons for this rule include the wish to free an adult from bearing the burden of a youthful mistake. . . ." MRE 609 cmt. In this case, Skinner had not committed a violent felony since this juvenile offense. That Skinner's only prior violent crime was committed when he was a youth should be given weight in determining whether Skinner should, years later, be sentenced to life without parole because of it.

¶68. Skinner's proof also clearly shows that he received a harsher sentence than other Mississippi defendants convicted of felony evasion. Skinner presented evidence regarding other inmates who are serving life without the parole as of August 30, 2018. According to the affidavit of the custodian of records for the Mississippi Department of Corrections, there were 372 Mississippi inmates serving sentences for felony evasion. Of those inmates, only eight inmates were serving life without parole for the felony-evasion crime. Of those eight inmates, five were convicted of other violent crimes in connection with the felony evasion crime. Thus, there are only three inmates who are currently serving a life-without-parole sentence because of prior violent offenses. Skinner may well be the only inmate convicted of felony evasion alone who received a life-without-parole sentence, using his prior youthful convictions. The State did not challenge Skinner's statistics. Thus, Skinner is the only one of three inmates serving a mandatory life-without-parole sentence who did not commit another felony, specifically a violent felony, in the commission of the felony evasion crime;

and may be the only whose youthful convictions were used to sentence him as a habitual offender.

¶69.   Additionally, Skinner presented evidence that he is serving a sentence that is disproportional to the sentences of defendants who were convicted of felony evasion in most other jurisdictions.  Exhibit U, a Fact Sheet from the Fair Punishment Project, summarizes sentencing statutes nationwide.  The document notes that in many jurisdictions, reform efforts have eliminated life-without-parole sentences for nonviolent offenses.  As noted above, Skinner's felony evasion was a nonviolent offense.  In twenty-nine United States jurisdictions, a life-without-parole sentence is not authorized for any nonviolent offense, even pursuant to a habitual offender statute.[25]  There are only three states that do.[26]  In other jurisdictions, the circumstances surrounding Skinner's charge would actually constitute a misdemeanor.[27]  Therefore, Skinner would not have served a life-without-parole sentence in the vast majority of other jurisdictions for his felony evasion conviction, even as a habitual

---

[25] Those states include Alaska, California, Colorado, Connecticut, Hawaii, Idaho, Indiana, Kansas, Kentucky, Maine, Maryland, Massachusetts, Minnesota, Missouri, Montana, Nebraska, New Hampshire, New Jersey, New Mexico, New York, Ohio, Oregon, Rhode Island, Tennessee, Texas, Utah, Vermont, Washington, and West Virginia.

[26] These states include Louisiana, Nevada, and South Dakota.

[27] *See, e.g.,* Ala. Code § 13A-10-52(c) (1975) (providing that flight from law enforcement is "a Class A misdemeanor unless the flight or attempt to elude causes an actual death or physical injury to innocent bystanders or third parties"); Ark. Code Ann. § 5-54-125 (2021) (providing that flight from police in a vehicle is a Class A misdemeanor unless "serious physical injury to any person occurs as a direct result of fleeing," in which case it is a Class C felony); N.C. Gen. Stat. § 20-141.5 (2013) (providing that flight from law enforcement is a "Class 1 misdemeanor" unless an aggravated flight is the proximate cause of the death or harm of any person in which case it is a "Class E felony").

offender.

¶70.    Skinner has presented significant and meaningful information on each of the criteria for determining proportionality as articulated in *Solem*.  First, with respect to the gravity of the offense and harshness of the sentence, Skinner's life-without-parole sentence is harsh in comparison to the maximum sentence of the crime of felony evasion, which is five years.  Second, Skinner showed that he may well be the only Mississippi inmate sentenced to life without parole for his felony evasion conviction, presumably by use of his youthful convictions.  Finally, Skinner presented evidence that the sentences imposed for commission of nonviolent offenses, such as felony evasion, in multiple other jurisdictions would not result in a sentence of life without parole.  Skinner's mandatory life-without-parole sentence is clearly grossly disproportional to the maximum five-year penalty for felony evasion, and his sentence violates the Eighth Amendment.  Given the substantial evidence Skinner presents in his PCR motion pursuant to the criteria outlined in *Solem*, I believe Skinner's sentence to be unconstitutional.  To limit the analysis as does the majority is tantamount to holding that a defendant convicted and sentenced as a habitual offender under section 99-19-83 could never challenge the constitutionality of his sentence.  As the United States Supreme Court said in *Solem*, no penalty is per se unconstitutional, *Solem*, 463 U.S. at 290.  Conversely, neither is any penalty per se constitutional either.  For these reasons, I dissent from the majority's decision in this case.

     **BARNES, C.J., AND WESTBROOKS, J., JOIN THIS OPINION.  McCARTY, J., JOINS THIS OPINION IN PART.**